IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES RICHARDS, *et al.*,              §
                                       §
     Plaintiffs,                     §
                                       §
v.                                     §      CIVIL ACTION NO. H-13-1394
                                       §
OFFICE OF VIOLENT SEX OFFENDER         §
MANAGEMENT, *et al.*,                  §
                                       §
     Defendants.                     §

MEMORANDUM & ORDER

     Pending are Defendants Allison Taylor, Lisa Worry, and Deborah Morgan's Motion to Dismiss (Document No. 63), Defendant Nicholas Edd's Motion to Dismiss (Document No. 89), Defendants Michael Wodkins and Debra Reed's Motion to Dismiss (Document No. 98), Defendant Susan Pocasangre's Motion to Dismiss (Document No. 109),[1] and Plaintiffs' Motion for Preliminary Injunction (Document No. 127). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows.

I. Background

     Plaintiffs James Richards, Israel Escobar, Lonnie Vanzandt, John Alexander, Donald Barbee, Seth Hill, Daniel Frazier, David

---

[1] Defendant Pocasangre's earlier-filed Motion to Dismiss (Document No. 92) is DISMISSED as moot.

Dodson, Jerry Reed, and Jimmy Crews (collectively, "Plaintiffs") have each been adjudged a sexually violent predator under the Texas Civil Commitment of Sexually Violent Predators Act ("SVP Act"), TEX. HEALTH & SAFETY CODE § 841.001 *et seq.*, and civilly committed to the supervision of the State of Texas, Office of Violent Sexual Offender Management (OVSOM).  Although separately adjudged as sexually violent predators in their individual cases that were adjudicated over a period of more than nine years, when this case was filed Plaintiffs all happened to be assigned to the Southeast Texas Transitional Center[2] (STTC) in Houston, Texas, while undergoing treatment for their respective behavioral disorders. Plaintiffs filed this *pro se* suit under 42 U.S.C. § 1983 and each was granted leave to proceed *in forma pauperis*.

In addition to STTC, the Complaint names fourteen persons as defendants in both their individual and official capacities.[3] The individual defendants fall into four categories.  The first category consists of OVSOM executives (collectively referred to as "Executive Defendants"): Allison Taylor, OVSOM Executive Director; Lisa Worry, OVSOM Program Administrator; and Deborah Morgan, OVSOM

---

[2] STTC is a privately owned facility operated by Geo Corporation under contract with OVSOM.  Geo is responsible for the day-to-day operations of STTC and the policies relating thereto.

[3] Document No. 1 at 4-7 (Orig. Cmplt.).  The Complaint also named OVSOM as a defendant, but the Court dismissed Plaintiffs' claims against OVSOM as barred by the Eleventh Amendment.  Document No. 136 at 3-4.

Supervisory Regional Manager.[4]  The second category consists of OVSOM Program Specialists (collectively referred to as "Program Defendants"): Alice Jauregui, Pondray Mathis, Billy Barnes, Christian Smith, Barbara Macnair, and Holly White.[5]  The third category consists of outside Contract Treatment Providers hired by OVSOM (collectively referred to as "Contract Defendants"): Michael Wodkins, Debra Reed, Dr. Nicholas Edd, and Susan Pocasangre.[6]  The last category consists of Eric Pierson, STTC Director.[7]  Plaintiffs seek compensatory and punitive damages, some collectively, and some individually (for example, Richards and Frazier pray for damages of $30,000 against Defendants Taylor and Jauregui for "violation of their property interests and the fraudulent and unconstitutional deprivation of their personal money," and Richards alone prays for $15,000 in damages against Defendant Jauregui "for retaliatory acts against him for exercising his constitutional right to seek redress of his grievances against her"), declaratory relief, and prospective injunctive relief.[8]

Plaintiffs assert as their causes of action against various usually non-specific defendants: (1) the failure to provide

---

[4] Document No. 1 at 4-5.

[5] Id. at 5-6.

[6] Id. at 6.

[7] Id. at 6-7.

[8] <u>Id.</u> at 75-80.

3

constitutionally adequate outpatient treatment and conditions, in violation of Plaintiffs' due process rights;[9] (2) the confinement of Plaintiffs in a punitive environment with prisoners, and the imposition of restrictive requirements and unwarranted sanctions on Plaintiffs, in violation of Plaintiffs' due process right to be free from unconstitutional punishment;[10] (3) the imposition of sanctions on Plaintiffs without notice and hearing, the failure to provide a meaningful grievance procedure to Plaintiffs, the retrospective application of the legislative requirement that Plaintiffs pay GPS tracking fees, and the creation and imposition of "hundreds of onerous and punitive requirements" without notice and hearing, all in violation of procedural due process;[11] (4) the imposition of the same restrictions on liberty as those imposed on persons released on parole or mandatory supervision, and the requirement that Plaintiffs pay GPS tracking fees while paroled sex offenders do not have to do so, in violation of Plaintiffs' equal protection rights;[12] (5) the requirement that Plaintiffs self-report infractions and submit to polygraphs, in violation of the privilege against self-incrimination;[13] (6) the imposition of requirements in

---

[9] Id. at 48-50.

[10] Id. at 50-54.

[11] Id. at 54-56.

[12] Id. at 56-58.

[13] Id. at 58.

excess of those ordered by the committing courts and the initiation of felony complaints and prosecutions, in violation of due process;[14] (7) the imposition of felony charges on Plaintiffs, prohibitions on consensual intimate relationships, interference with Plaintiffs' ability to maintain employment, limitations on access to medical treatment, restrictions on associating with family and others, failure to provide adequate access to courts, restrictions on private property, deprivation of Plaintiffs' Supplemental Security Income ("SSI") and personal finances, all in violation of due process;[15] (8) the unlawful seizure of Plaintiffs' SSI income and unreasonable searches of Plaintiffs' personal financial information, in violation of Plaintiffs' reasonable expectation of privacy;[16] (9) restrictions on Plaintiffs' access to courts and the denial of their rights to association, free speech, religion, marriage, procreation, and sexuality;[17] (10) retaliation against Plaintiffs for seeking redress of grievances;[18] (11) conspiracy to deny Plaintiffs their constitutional rights;[19] (12) the failure of the Executive Defendants to prevent the

---

[14] Id. at 58-60.

[15] Id. at 60-66.

[16] Id. at 66-67.

[17] Id. at 67-70.

[18] Id. at 70-72.

[19] Id. at 72.

violation of Plaintiffs' constitutional rights;[20] and (13) the failure to provide outpatient treatment and supervision in violation of the Texas Health and Safety Code.[21]

The Executive and Contract Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule (12)(b)(6) of the Federal Rules of Civil Procedure.[22]   Eight of the ten Plaintiffs move for a preliminary injunction.[23]

## II.  Motion for Preliminary Injunction

Eight of Plaintiffs move for a preliminary injunction to prohibit "OVSOM, its agents, successors, assigns, attorneys, or anyone acting in concert or participation with them" from "(a) subjecting Plaintiffs to arrest and criminal prosecution pursuant to Texas Health & Safety Code § 841.085 while confined, and/or (b) engaging in any action intended for the purpose, or likely to cause, their arrest and prosecution pursuant to that statute while they are confined and suffering the loss of their freedom as outpatients."[24]

---

[20] Id. at 72-73.

[21] Id. at 73-75.

[22] Document Nos. 63, 89, 98, and 109.

[23] Document No. 127.

[24] Id. at 10.

To obtain a preliminary injunction, a plaintiff must establish the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent the injunction; (3) that the threatened injury to the plaintiff outweighs any harm the injunction might cause the defendants; and (4) that the injunction does not disserve the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000). Injunctive relief in the form of "superintending federal injunctive decrees directing state officials," is an extraordinary remedy. *See* Morrow v. Harwell, 768 F.2d 619, 627 (5th Cir. 1985). A preliminary injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion on all of the prerequisites. *Cherokee Pump & Equip., Inc. v. Aurora Pump*, 38 F.3d 246, 249 (5th Cir. 1994).

Plaintiffs, citing In re Commitment of Michael Fisher, 164 S.W.3d 637 (Tex. 2005), contend that they have demonstrated a substantial likelihood of success on the merits because they "are confined eighteen to twenty-four hours a day in the locked STTC facility," and thus, they cannot be subjected to criminal penalties under § 841.085.[25]

---

[25] *See* id. at 5, 7.

Plaintiffs misinterpret Fisher.  In Fisher, the Supreme Court of Texas comprehensively analyzed the SVP Act and, after carefully applying the seven Kennedy[26] factors, determined that the Act is civil, not criminal or punitive, and therefore that Fisher was not entitled to a competency determination before his SVP trial.  The seven Kennedy factors applied by the court were:  (1) whether the sanction involves an affirmative disability or restraint; (2) whether it was historically regarded as punishment; (3) whether it requires a finding of scienter; (4) whether it promotes retribution and deterrence; (5) whether the behavior to which is applies is a crime; (6) whether it has a rational alternative purpose; and (7) whether it appears excessive in relation to that alternative purpose.  Id. at 647.  The court found that none of the factors weighed in favor of finding that the statute was punitive.  Moreover, the court explained that it would reject the legislature's intent that the Act is civil only if the plaintiff provided "the clearest proof that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'"  Id. (citing Kansas v. Hendricks, 117 S. Ct. 2072, 2075 (1997)).

Plaintiffs' argument focuses on the Supreme Court of Texas's analysis of the seventh factor, excessiveness, and specifically whether the Act's imposition of severe criminal penalties

---

[26] Kennedy v. Mendoza-Martinez, 83 S. Ct. 554, 567-568 (1963).

(§ 841.085) for violating a condition of confinement "sufficiently tips the statute into the punitive realm." Id. at 652.  The court observed that the civil commitment statute upheld by the United States Supreme Court in Hendricks, along with the laws of every other state with civil commitment procedures, mandated commitment in a secure inpatient facility.  Id. at 642, 652.  In contrast, "the Texas Act permits the SVP to live at large in the community" and thus, "appears at once less restrictive and potentially more restrictive than its out-of-state counterparts.  On the whole, however, the freedom from confinement outweighs the criminal sanction imposed for a failure to obey the commitment conditions." Id. at 652.  The Supreme Court of Texas observed that the Texas Act "imposes no physical restraint," although the civilly committed plaintiff "must reside at a particular location, may not leave Texas without permission, must be fitted with satellite monitoring equipment, and faces a host of restrictions on his activities."[27] Id. at 648.[28]  The court therefore "conclude[d] that the criminal

_____

[27] When Fisher was decided, the Texas SVP Act required sexually violent predators to "reside in a particular location." See TEX. HEALTH & SAFETY CODE § 841.082(a)(1)(2003).  See also Fisher, 164 S.W.3d at 641.  The current version of the Act requires such predators "to reside in a Texas residential facility under contract with the office or at another location or facility approved by the office."  TEX. HEALTH & SAFETY CODE § 841.082(a)(1).

[28] The court explained that these restrictions "are certainly no greater than the inpatient commitment held to be civil in Hendricks."  Id.  (citing Hendricks, 117 S. Ct. 2072 (upholding Kansas law requiring inpatient commitment of sexually violent predators)).

9

penalties attaching to a violation of a commitment requirement, when considered in relation to the statutory purpose and alongside the other *Kennedy* factors, do not make the commitment scheme punitive." Id. at 653.

Although Fisher stated that 'freedom from confinement' outweighed the potential criminal sanction for failure to obey the commitment conditions, the court did not delineate whether anything less than complete inpatient confinement--as in Kansas--would possibly render the SVP Act punitive.  Here, however, Plaintiffs plead that they--depending on their supervision level--are variously permitted to leave the STTC "for periodic scheduled medical visits, group therapy, a monthly super market visit, job search, quarterly mandatory drug tests, or other OVSOM mandated trips, all either under escort and/or under case manager surveillance."[29]  As in Fisher, the intrusion on Plaintiffs' liberty is "far less restrictive than if [they] were confined in a secure facility in Kansas.  And yet the Supreme Court found commitment

---

[29] Document No. 1 at 23.  Plaintiffs cite Jackson v. Johnson, 475 F.3d 261, 264-65 (5th Cir. 2007), to argue that they are "confined," and thus cannot be subjected to criminal penalties. Jackson, however, decided only that a mandatory supervisee detained in a halfway house 16 to 24 hours per day for a *criminal conviction* was a "prisoner" within the meaning of the Prison Litigation Reform Act, and hence was subject to the three-strikes bar when moving to proceed *in forma pauperis* on appeal.  *See* 28 U.S.C. 1915(g). Jackson has no application to these facts where Plaintiffs are civilly committed under a totally different legislative scheme for outpatient care after having been adjudged to be sexually violent predators, and are not detained as prisoners serving out criminal sentences.

under the Kansas Act to be civil in nature." <u>Id.</u> (quoting <u>In re Commitment of Browning</u>, 113 S.W.3d 851, 859 (Tex. App.–Austin 2003, pet. denied)).   Moreover, <u>Fisher</u> only considered the application of § 841.085 as part of a multi-factored inquiry into whether the statute was punitive and, citing <u>Hudson v. United States</u>, 118 S. Ct. 488 (1997), observed that the excessiveness factor alone is not dispositive on whether the civil commitment statute is punitive. <u>Id.</u> at 652.   Plaintiffs have failed to show a substantial likelihood of success on the merits of their claim.

Plaintiffs further argue that "the prosecution of Plaintiffs while they are confined constitutes punishment and runs afoul of the U.S. Supreme Court's holding in Youngberg . . . that civil detainees, while confined, may not be punished at all."[30]   *See* <u>Youngberg v. Romeo</u>, 102 S. Ct. 2452, 2458 (1982) (involuntarily committed individuals "may not be punished at all").   Accepting that premise as true, § 841.085 simply proscribes a committed sexually violent predator from violating a civil commitment requirement imposed by the judge who committed him.   Under the statute, he cannot be punished unless he is criminally charged, prosecuted, and found by a jury to be guilty of the charged offense beyond a reasonable doubt.[31]   *See* <u>Fisher</u>, 164 S.W.3d at 652 n.13

---

[30] Document No. 127 at 13.

[31] Texas Health & Safety Code § 841.085 provides:

(a) A person commits an offense if, after having been

("This criminal penalty is separate from the initial commitment proceedings."). Only then can an offender be punished for the offense of conviction, not as a civilly committed sexually violent predator.

Not only have Plaintiffs failed to show a substantial likelihood of success on the merits, they have also failed to demonstrate that absent an injunction they will suffer irreparable harm based on their claimed fear "to exercise fundamental constitutional rights they retain as 'outpatients' for fear of being violated, arrested, and prosecuted."[32] Similarly, Plaintiffs have not shown any threatened harm to themselves--absent an injunction--that outweighs the threatened harm to the interests represented by Defendants if Plaintiffs are permitted with impunity to violate their civil commitment orders under the protective umbrella of an injunction that bars Defendants from bringing charges for violations of § 841.085. Finally, Plaintiffs have not shown that the preliminary injunction by which they seek to vitiate

---

adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082.

(b) An offense under this section is a felony of the third degree.

(c) At the request of the local prosecuting attorney, an attorney employed by the civil division of the special prosecution unit described by Section 841.004 may assist in the trial of an offense under this section.

[32] Document No. 127 at 12.

§ 841.085 will not disserve the public interest.  Each Plaintiff, after all, has been adjudged to be one of what the legislature identified as "a small but extremely dangerous group of sexually violent predators . . . that have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated acts of sexual violence."  TEX. HEALTH & SAFETY CODE § 841.001.  The public's compelling interest was articulated by the Texas Legislature in the statute itself, namely that the civil commitment procedure is necessary and "in the interest of the state" to provide for the "long-term supervision and treatment of sexually violent predators."  Id. (Sexually violent predators are "likely to engage in repeated predatory acts of sexual violence.").   To enjoin Defendants from acting under § 841.085, which is the counter-balance to Plaintiffs' outpatient freedoms to incent these sexually violent predators to comply with their civil commitment orders, would manifestly disserve the public interest.  Plaintiffs' Motion for Preliminary Injunction must be denied.

### III.   Remaining Motions

In its September 30, 2013 Order, the Court denied Plaintiffs' Motion for Class Certification.[33]  The Court observed at the time that Plaintiffs' remaining complaints were against individual

---

[33] Document No. 136.

13

Defendants about specific conditions, treatment, or requirements imposed upon them, and that Plaintiffs essentially allege that personnel and treatment providers arbitrarily or unreasonably improvise various restrictions or requirements on a whim, which suggests the likelihood of widely varying individual actions with respect to civilly committed sexually violent predators, as well as variations between different facilities in Texas. In analyzing the remaining motions, it has become all the more evident that Plaintiffs' claims are highly individualized, are not properly joined under Federal Rule of Civil Procedure 20, and must be severed. Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action," but that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. Furthermore, under Rule 42, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). Whether to sever claims is in the Court's discretion. *See* <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 522 (5th Cir. 2010) ("[D]istrict courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims.").

Plaintiffs jointly allege that they have been subjected to unconstitutional conditions of commitment while residing at STTC, but acknowledge that each Plaintiff is subject to different requirements depending on the case managers and treatment providers to whom he is assigned.[34]   Furthermore, Plaintiffs, who as individuals were separately committed across a span of more than nine years (from Plaintiff Richards, who was committed January 6,

---

[34] *See* Original Complaint (Document No. 1) at 34-35 ("Treatment providers are independent contractors with the state, not state employees, and act independently.   As a result, there is no consistency among treatment providers, groups, progress, rules within the groups, and other areas of treatment.   As an example, Defendant Pocasangre's written group rules require that clients allow her to read all incoming and outgoing letters, including to clients' families . . . .   Treatment providers essentially act at will."); id. at 45 (Program Defendants "act as chairpersons of the case management teams.   These defendants participate in decisions regarding, but are not limited to, Plaintiffs' progress (or lack thereof) in treatment, supervision levels, contact approval/disapproval, expulsion or unsatisfactory discharge from treatment, chaperone approval/disapproval, aftercare, and transition to/into the community. . . . These Defendants are responsible for, but are not limited to, the calculation and assessment of Plaintiffs' GPS fees, implementation and enforcement of sanctions, formulation, implementation, and enforcement of 'supplemental Requirements,' issuing verbal instructions, and making decisions regarding Plaintiffs' daily activities, medical appointments, mail, personal contacts, job and educational opportunities approval/disapproval, requesting arrest warrants, surveillance of Plaintiffs, monitoring Plaintiffs via GPS monitoring, and the general direction of Plaintiffs' lives."); id. at 46 (Contract Defendants are members of Plaintiffs' case management teams and participate in many of the same decisions as Program Defendants.   Contract Defendants also "determine the days and hours treatment is provided, make deviations from or within the treatment curriculum, suspend or prolong treatment, determine treatment sanctions, [and] determine expulsions from treatment which result in prosecution for a third degree felony (possibly enhanced to a first degree felony).")

2003, to Plaintiff Alexander, who was committed February 28, 2012),
have alleged facts suggesting that they have progressed at
different rates through the treatment program,[35] have had fines

---

[35] *See* id. at 22 ("Plaintiff Escobar has been in the outpatient
civil commitment program for approximately five years with no
significant problems in supervision or treatment" but "has only
recently been able to attain level four status."); id. at 25
("Incident reports and sanctions directly affect progression in
treatment, biennial review recommendations, and ultimately a
Plaintiff's freedom.  Incident reports are considered a failure to
progress, and Plaintiffs can be jailed and prosecuted for failure
to progress in treatment.  Disciplinary sanctions can cause at
least a six month delay in attaining a higher supervision level,
and thus a delay in progression in treatment, the ability to visit
the supermarket, or the ability to conduct job search."); id. at 39
(Plaintiff Richards's family completed chaperone training in April
2010 and his treatment provider and case manager subsequently
approved a 'chaperone contract' for him, but he has "been prevented
from beginning module ten (10) of the treatment curriculum
(Maintaining the Chaperone Relationship). . . . [H]e is being
consistently assigned unessential adjunct assignments, and is no
longer progressing through the treatment module workbook."); id. at
40 (Plaintiff Richards's supervision/privilege level was reduced
from level four to level three, rendering him ineligible for
employment, after he asked to attend a forklift certification class
at which a woman might be present); id. at 49 ("As punishment for
program infractions, clients can be, and have been set back to the
beginning of the core treatment curriculum.")

assessed individually,[36] have different disciplinary histories,[37]
have different job histories,[38] have filed various individual

---

[36] *See* id. at 26 ("Plaintiff Reed, who is totally blind, is
forced to relinquish $167.29 of his monthly SSI benefits as payment
for GPS tracking fees. . . . Other clients on federal disability or
retirement benefits are also forced to relinquish portions of
their SSI or retirement benefits as payment for GPS tracking fees, a
financial burden legally belonging to the state."); id. ("From
November 2010 to October 2011 with regard to Plaintiff Richards,
Defendant Jauregui assessed GPS tracking fees based on his monthly
expenditures rather than on income . . . .  Additionally, from
January 2012 to September 2012 with regard to Plaintiff Frazier,
Defendant Jauregui assessed GPS tracking fees based on his monthly
expenditures rather than on income . . . .")

[37] *See* id. at 16 (On April 30, 2012, Plaintiff Richards
received a disciplinary write-up for failing to exit his room
during a fire drill.  STTC found Richards had not violated the
rules, but his case manager Defendant Macnair "exacted punishment
anyway," requiring Richards to write all supervision rules twice
and removing him from his work assignment in maintenance for thirty
days.); id. at 35 ("In August of 2012, Defendant Pocasangre read,
then prohibited Plaintiff Dodson from mailing a letter to his
mother because she disagreed with language in his letter regarding
the program.  Plaintiff Dodson was punished by Pocasangre with
writing assignments regarding the matter.  In addition, Dodson was
previously prohibited from visitation and phone calls to his mother
for an entire year . . . as punishment for failing a polygraph.");
id. at 37 ("[C]lients are sanctioned and punished in various ways
for failing polygraphs, even though polygraphs are unreliable and
have no evidentiary value.  As a single example, Plaintiff Barbee
recently failed a 'maintenance polygraph' on September 12, 2012 .
. . he was punished for failing the polygraph test."); id. at 59
("The OVSOM Defendants . . . subject Plaintiffs and other clients
to felony complaints and prosecution.  The OVSOM Defendants make
'sua sponte' determinations that clients have violated the
conditions of the Court's Final Judgment and Order of Commitment.")

[38] *See* id. at 21-22 ("For example, Plaintiff Richards has
worked on four separate occasions and was forced to forfeit jobs
because of the OVSOM's restrictions on days and hours allowed to be
worked (e.g. no Saturdays or weekends).  Plaintiffs and others must
obtain a level (4) four supervision level (at the case manager's
discretion) in order to job search.")

grievances,[39] have varying levels of access to family members,[40] and have required varying levels of medical care.[41]

As one might expect from the foregoing, the Original Complaint alleges far more than a hundred disparate problems and complaints that one or more of Plaintiffs, or other unnamed "clients," have or have had during their civil commitments as adjudged sexually violent predators under the supervision of OVSOM. Thus, various of the sexually violent predators, frequently unnamed, complain about such disparate matters as being limited to one hug at the beginning of a visit by a family member or friend and one hug at the end of

_____

[39] *See* id. at 32 (Plaintiff Alexander filed a grievance in September 2012 objecting to Defendant White's confiscation of his personal letters and pictures and her refusal to allow him to attend religious services at STTC); id. (Plaintiff Barbee filed a grievance in the summer of 2011 complaining that he was transported in an OVSOM contractor's van without air conditioning).

[40] *See* id. at 40 ("In spite of the importance of family involvement, clients can, and have had their familial contact privileges stripped as a sanction, and can then be sanctioned for having unauthorized contact with family members. Some client's familial contact approval is contingent upon a family member regularly participating in 'family sessions' even though familial contact is also important outside of the treatment setting."); id. at 63 ("Defendants often use family members' criminal histories to deny a client contact with family members."); id. at 68 ("Plaintiffs and others are routinely denied contact with family and friends for extended periods of time and some men are denied collateral contacts permanently.")

[41] *See* id. at 62 ("Clients have been forced to 1) cancel medical appointments; 2) return to the STTC without getting radiation treatment for prostate cancer; and 3) denied a return trip to the University of Texas Medical Branch at Galveston (UTMB-Galveston) for inclusion on the organ transplant list.")

the visit; inadequate storage space for personal items; having to carry and present i.d. badges; not being allowed to use the public bus system, or to ride with family members when out in the community; having mattresses that are only 30 inches wide and hard; being served food that is believed not to meet the recommended daily allowances of calories and nutritional value recommended by the U.S. Department of Agriculture; being served small portions of food, which is not filling; being required to obey any direction received from a case manager; being required to recharge GPS tracking devices twice a day for two hours each; being allowed to leave the STTC only for scheduled medical visits, group therapy, a monthly supermarket visit, a job search, a quarterly mandatory drug test, but always under escort and/or case manager surveillance; finding unaffordable the $42 price of a cab ride to the Harris County Law Library; not being allowed to play basketball for over a year; having one's pictures of his grandmother, sister, and nieces confiscated and thrown in the trash; on a hot summer day being transported in an OVSOM contractor's van that did not have air conditioning; and on and on. In sum, the 80-pages long Original Complaint is a huge conglomerate of sundry criticism and complaints only occasionally tied to any specific Plaintiff, from which it is impossible to discern any specific constitutional injury or injuries that an individual Plaintiff actually may have sustained, the facts that support such a claim, when it occurred,

and the particular Defendant(s) against whom the claim is made. This plethora of claims of ten disparate Plaintiffs is not properly joined. *See* Johnson v. Texas Board of Criminal Justice, Civ. A. 04-0370 (S.D. Tex. Sept. 15, 2004) (Rosenthal, J.) (dismissing complaint brought by six prisoners alleging "over one hundred disparate problems they have with prison life" because "[b]y naming multiple defendants and including numerous transactions, the complaint violates Rule 8, Rule 18, and Rule 20 of the Federal Rules of Civil Procedure.").

In order to avoid delay and endless confusion about what each individual Plaintiff's claims may be, and against whom, it is necessary to sever the case and to permit each Plaintiff to state his own individual claim(s) based on the facts relevant to his own commitment and conduct as a sexually violent predator. *See* Sisneroz v. Ahlin, No. 1:08-cv-01358-SMS-PC, 2009 WL 224899, at *1 (E.D. Cal. Jan. 29, 2009) (severing claims brought by seven civilly committed sexually violent predators objecting to conditions at state hospital and observing that "an action brought by multiple plaintiffs proceeding pro se in which the plaintiffs are detained presents procedural problems that cause delay and confusion. Further, the need for all plaintiffs to agree on all filings made in this action, and the need for all filings to contain the original signatures of all plaintiffs will lead to delay and confusion."). The Original Complaint does not state a cause of

action upon which relief can be granted to any one or more of Plaintiffs, and if a cause of action is embedded somewhere in the Original Complaint, it is obscured by the multitude of other wide-ranging allegations.

Thus, the Court will order this case severed into ten individual causes, each with its own cause number and title, and will grant a reasonable period of one month's time for each Plaintiff who desires to go forward with this case to file a First Amended Complaint in his own name.

## ORDER

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Document No. 127) is **DENIED.** It is further

**ORDERED** that this case no. H-13-CV-1394 is **SEVERED** into ten separate causes of action, all to be assigned to the undersigned Judge, and bearing the titles as shown below. The case number for each new case will be sent to each Plaintiff at his address of record as soon as a case number is assigned to his cause. The ten severed cases are titled as follows:

Cause No. H-13-CV-1394, James Richards v. Office of Violent Sex Offender Management, and Others (this original cause number remains unchanged and hereafter applies only to the case filed by James Richards). All documents filed to date remain in this case number.

Cause No. H-14-CV-_____, Israel Escobar v. Office of Violent Sex Offender Management, and Others. The Court directs the Clerk to copy the following documents from Cause No. H-13-CV-1394 into Plaintiff Escobar's cause:

- Document No. 1, Original Complaint
- Document No. 3, Application to Proceed *In Forma Pauperis* by Israel Escobar
- Document No. 34, Order granting *in forma pauperis* status to Plaintiff Escobar and others
- Document No. 88, Defendants Jauregui, Mathis, Barnes, Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion to dismiss and Plaintiff's motions for appointment of counsel, to certify class, to consolidate, for judicial notice, and to strike
- This Memorandum and Order

Cause No. H-14-CV-_____, Lonnie Vanzandt v. Office of Violent Sex Offender Management, and Others. The Court directs the Clerk to copy the following documents from Cause No. H-13-CV-1394 into Plaintiff Vanzandt's cause:

- Document No. 1, Original Complaint
- Document No. 4, Application to Proceed *In Forma Pauperis* by Lonnie Vanzandt
- Document No. 16, Order granting *in forma pauperis* status to Lonnie Vanzandt
- Document No. 88, Defendants Jauregui, Mathis, Barnes, Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion to dismiss and Plaintiff's motions for appointment of counsel, to certify class, to consolidate, for judicial notice, and to strike
- This Memorandum and Order

Cause No. H-14-CV-_____, <u>John Alexander v. Office of Violent</u>
<u>Sex Offender Management, and Others</u>.  The Court directs the
Clerk to copy the following documents from Cause No. H-13-CV-
1394 into Plaintiff Alexander's cause:

- Document No. 1, Original Complaint
- Document No. 5, Application to Proceed *In Forma Pauperis*
  by John Alexander
- Document No. 34, Order granting *in forma pauperis* status
  to Plaintiff Alexander and others
- Document No. 88, Defendants Jauregui, Mathis, Barnes,
  Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional
  Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion
  to dismiss and Plaintiff's motions for appointment of
  counsel, to certify class, to consolidate, for judicial
  notice, and to strike
- This Memorandum and Order


Cause No. H-14-CV-_____, <u>Donald Barbee v. Office of Violent</u>
<u>Sex Offender Management, and Others</u>.  The Court directs the
Clerk to copy the following documents from Cause No. H-13-CV-
1394 into Plaintiff's Barbee's cause:

- Document No. 1, Original Complaint
- Document No. 6, Application to Proceed *In Forma Pauperis*
  by Donald Barbee
- Document No. 34, Order granting *in forma pauperis* status
  to Plaintiff Barbee and others
- Document No. 88, Defendants Jauregui, Mathis, Barnes,
  Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional
  Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion
  to dismiss and Plaintiff's motions for appointment of
  counsel, to certify class, to consolidate, for judicial
  notice, and to strike
- This Memorandum and Order

Cause No. H-14-CV-_____, <u>Seth Hill v. Office of Violent Sex Offender Management, and Others</u>.  The Court directs the Clerk to copy the following documents from Cause No. H-13-CV-1394 into Plaintiff Hill's cause:

- Document No. 1, Original Complaint
- Document No. 7, Application to Proceed *In Forma Pauperis* by Seth Hill
- Document No. 34, Order granting *in forma pauperis* status to Plaintiff Hill and others
- Document No. 88, Defendants Jauregui, Mathis, Barnes, Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion to dismiss and Plaintiff's motions for appointment of counsel, to certify class, to consolidate, for judicial notice, and to strike
- This Memorandum and Order

Cause No. H-14-CV-_____, <u>Daniel Frazier v. Office of Violent Sex Offender Management, and Others</u>.  The Court directs the Clerk to copy the following documents from Cause No. H-13-CV-1394 into Plaintiff Frazier's cause:

- Document No. 1, Original Complaint
- Document No. 8, Application to Proceed *In Forma Pauperis* by Daniel Frazier
- Document No. 34, Order granting *in forma pauperis* status to Plaintiff Frazier and others
- Document No. 88, Defendants Jauregui, Mathis, Barnes, Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion to dismiss and Plaintiff's motions for appointment of counsel, to certify class, to consolidate, for judicial notice, and to strike
- This Memorandum and Order

Cause No. H-14-CV-_____, <u>David Dodson v. Office of Violent Sex Offender Management, and Others</u>.  The Court directs the Clerk to copy the following documents from Cause No. H-13-CV-1394 into Plaintiff Dodson's cause:

- Document No. 1, Original Complaint
- Document No. 9, Application to Proceed *In Forma Pauperis* by David Dodson
- Document No. 21, Order granting *in forma pauperis* status to David Dodson
- Document No. 88, Defendants Jauregui, Mathis, Barnes, Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion to dismiss and Plaintiff's motions for appointment of counsel, to certify class, to consolidate, for judicial notice, and to strike
- This Memorandum and Order


Cause No. H-14-CV-_____, <u>Jerry Reed v. Office of Violent Sex Offender Management, and Others</u>.  The Court directs the Clerk to copy the following documents from Cause No. H-13-CV-1394 into Plaintiff Reed's cause:

- Document No. 1, Original Complaint
- Document No. 10, Application to Proceed *In Forma Pauperis* by Jerry Reed
- Document No. 34, Order granting *in forma pauperis* status to Plaintiff Reed and others
- Document No. 88, Defendants Jauregui, Mathis, Barnes, Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion to dismiss and Plaintiff's motions for appointment of counsel, to certify class, to consolidate, for judicial notice, and to strike
- This Memorandum and Order

25

Cause No. H-14-CV-_____, <u>Jimmy Crews v. Office of Violent Sex Offender Management, and Others</u>.  The Court directs the Clerk to copy the following documents from Cause No. H-13-CV-1394 into Plaintiff Crews's cause:

- Document No. 1, Original Complaint
- Document No. 11, Application to Proceed *In Forma Pauperis* by Jimmy Crews
- Document No. 34, Order granting *in forma pauperis* status to Plaintiff Crews and others
- Document No. 88, Defendants Jauregui, Mathis, Barnes, Smith, Macnair, and White's Original Answer
- Document No. 90, Defendants Southeast Texas Transitional Center and Director Eric Pierson's Original Answer
- Document No. 114, Transfer Order
- Document No. 136, Memorandum and Order on OVSOM's motion to dismiss and Plaintiff's motions for appointment of counsel, to certify class, to consolidate, for judicial notice, and to strike
- This Memorandum and Order

Other documents filed before today in Cause No. H-13-CV-1394 and not transferred to the new individual files may be referenced by the parties as necessary to provide context or a predicate for the documents herein ordered to be placed in the new files.

It is further

**ORDERED** that Defendant Susan Pocasangre's first Motion to Dismiss (Document No. 92) is **DISMISSED** as moot, having been superseded by her later filed motion; and Defendants Allison Taylor's, Lisa Worry's, and Deborah Morgan's Motion to Dismiss (Document No. 63), Defendant Nicolas Edd's Motion to Dismiss (Document No. 89), Defendants Michael Wodkins's and Debra Reed's Motion to Dismiss (Document No. 98), and Defendant Susan

Pocasangre's Motion to Dismiss (Document No. 109) are all **DENIED WITHOUT PREJUDICE.**  It is further

　　　**ORDERED** that each of Plaintiffs who desires to continue to prosecute an action against one or more named Defendants shall file a First Amended Complaint in his own name in the cause number assigned to him.  To proceed, each Plaintiff must file his First Amended Complaint within **one month after the date of this Order,** and no later than **April 21, 2014.**  Each such First Amended Complaint must be filed in each such Plaintiff's own name and in the specific cause number assigned to his case.  Each Plaintiff must state only his own individual claim(s), and name the Defendant(s) against whom each such claim is made.  Each Plaintiff is not to allege claims of *other* Plaintiffs or copy other persons' complaints that allege facts pertinent to those other persons. Although each case bears the name of Office of Violent Sexual Offender Management as a Defendant, all claims against the Office of Violent Sexual Offender Management were dismissed as barred by the Eleventh Amendment (*see* Memorandum and Order signed September 30, 2013, Document No. 136), and no further claims may be alleged against that dismissed Defendant.  Likewise, for the reasons set out in this Memorandum and Order, copying or incorporating by reference the sundry complaints alleged in the Original Complaint will not satisfy the requirements of this Order to plead only *your own individual claim(s)*.  Legal references and citations are not

necessary except where required to clarify the nature of the legal claim(s) that you allege for yourself.  Each Plaintiff should focus on the facts that support your own individual claim(s) of unlawful or unconstitutional conduct.  Each Plaintiff must list each of his own claims separately, including under each claim heading a plain statement of the legal injury suffered, a summary of the facts that support that particular claim, including the name of each Defendant accused of being directly responsible for the violation alleged in that claim, whether that Defendant is sued in an individual and/or official capacity, how that Defendant caused the claimed injury, and when.  Each separate claim should follow the foregoing format.  A failure to comply with these pleading requirements may result in summary dismissal of any deficient claims.  It is further

**ORDERED** that if any Plaintiff chooses not to go forward with his case by filing a First Amended Complaint, he may (1) file a motion for dismissal of his own case without prejudice, or (2) take no further action and, after the expiration of thirty-one (31) days following the date of this Order, the Court will dismiss such Plaintiff's case for failure to state a claim upon which relief can be granted.  It is further

**ORDERED** that those Defendants whose motions to dismiss are denied without prejudice in this Order (Defendants Taylor, Worry, Morgan, Edd, Wodkins, Reed, and Pocasangre), shall have **twenty-one (21) days** after their attorney(s) of record is served by a

28

Plaintiff with a First Amended Complaint, to move, answer, or otherwise plead in response to each such Plaintiff's First Amended Complaint; and those Defendants who previously filed responsive Answers to the Original Complaint (Defendants Jauregui, Mathis, Barnes, Smith, Macnair, White, Pierson, and STTC) shall have **twenty-one (21) days** after their attorney(s) of record is served with a copy of a Plaintiff's First Amended Complaint to file their First Amended Answer to each such First Amended Complaint.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 21st day of March, 2014.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE