IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAMES RICHARDS, §
§
    Plaintiff §
§
v. § CIVIL ACTION NO. H-13-1394
§
OFFICE OF VIOLENT SEX OFFENDER §
MANAGEMENT, *et al.*, §
§
    Defendants. §

MEMORANDUM AND ORDER ON PARTIAL DISMISSAL

Pending is Defendant Dr. Nicholas Edd's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Document No. 163). For the reasons that follow, the Court will grant the motion as to all claims against Defendant Edd except those in Counts VI and XIV.

I. Background

Plaintiff James Richards is a sexual offender who has been adjudicated a sexually violent predator ("SVP") under the Texas Civil Commitment of Sexually Violent Predators Act ("SVP Act") and civilly committed to the supervision of the State of Texas, Office of Violent Sexual Offender Management ("OVSOM"). Plaintiff is currently restricted to a halfway house at the Southeast Texas Transitional Center ("STTC") in Houston, Texas, while receiving treatment for his behavioral abnormality. Plaintiff filed this

suit under 42 U.S.C. § 1983 *pro se* and was granted leave to proceed *in forma pauperis*.[1]  Plaintiff's First Amended Complaint alleges that the terms of his supervision and treatment at STTC, as imposed and implemented by Defendant and others, violate his civil rights.[2]

Plaintiff alleges that Defendant Dr. Nicholas Edd ("Defendant") is a mental health professional who contracted with OVSOM to provide treatment to individuals at STTC, and is part of Plaintiff's "case management team."[3]  Plaintiff presents the following claims against Defendant Edd:

> Count II: Denial of substantive due process based on "overall implementation" of the Sexually Violent Predator Act.[4]
>
> Count VI: Denial of substantive due process based on constitutionally inadequate sex offender treatment.[5]
>
> Count VII: Violation of TEX. HEALTH & SAFETY CODE § 841.007 requirement for appropriate and necessary treatment.[6]
>
> Count VIII: Denial of substantive due process by implementation and imposition of "adhesion contracts."[7]

---

[1] Document No. 2.

[2] Document No. 155.

[3] Id. at 3.

[4] Document No. 155 at 38.

[5] Id. at 40-41.

[6] Id. at 41.

[7] Id. at 41-42.

Count IX: Denial of procedural due process by imposition and enforcement of standardized "adhesion contracts" without a hearing or other procedural safeguards.[8]

Count X: Denial of procedural and substantive due process based on the "adhesion contracts" constituting a *de facto* "private penal code."[9]

Count XIV: Denial of substantive due process and violation of state law based on introduction of new treatment curriculums and employment requirement that delayed and prevented Plaintiff from progressing to aftercare and possible release.[10]

Count XIX: Conspiracy to subject Plaintiff to a system of punitive and preventive detention in violation of the Fourteenth Amendment.[11]

Defendant moves to dismiss for want of subject matter jurisdiction under Rule 12(b)(1) Plaintiff's claims for damages against Defendant in his official capacity.  Defendant also asserts that Plaintiff's claims are barred under the <u>Rooker-Feldman</u> doctrine and the <u>Heck</u> favorable-termination rule to the extent that they challenge the validity of the state court's commitment order. Defendant further asserts that Plaintiff lacks standing to pursue his claims in Counts VIII, IX and X because he has not alleged any non-speculative injury.

---

[8] <u>Id.</u> at 42.

[9] <u>Id.</u> at 42-43.

[10] <u>Id.</u> at 45-46.

[11] <u>Id.</u> at 49-50.

Defendant moves to dismiss Plaintiff's remaining claims pursuant to Rule (12)(b)(6) of the Federal Rules of Civil Procedure. Defendant also asserts that he is entitled to qualified immunity from Plaintiff's individual-capacity damages claims and that he is immune from liability for good faith conduct pursuant to the SVP Act.

## II. Rule 12(b)(1)--Subject Matter Jurisdiction

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" Halmekangas v. State Farm Fire and Cas. Co., 603 F.3d 290, 292 (5th Cir. 2010) (citations omitted). As such, the existence of subject matter jurisdiction may be challenged at any stage in the litigation and may be raised by the district court on its own motion. *See* Nguyen v. Dist. Director, Bureau of Immigration and Customs Enforcement, 400 F.3d 255, 260 (5th Cir. 2005) (citations omitted). Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. *See* Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed along with other Rule 12 motions, the court should first consider the Rule 12(b)(1) motion. Id.

4

A.   <u>Official Capacity Damages Claims</u>

Defendant moves to dismiss as barred by sovereign immunity all claims for damages against him in his official capacity.  In his response brief, Plaintiff concedes that he cannot recover damages against Defendant in his official capacity and clarifies that he "seeks monetary relief <u>only in Defendant Edd's individual capacity</u>."[12]  Thus, this issue is moot.

B.   <u>Count VII: Defendant Edd's Alleged Violation of State Law</u>

Defendant argues that Plaintiff's state law claims against Defendant in his official capacity are barred by the Eleventh Amendment.[13]  "The Eleventh Amendment bars private citizens from bringing suit against a state in federal court, unless the suit falls within the narrow exception articulated by the Supreme Court in <u>Ex Parte Young</u>." <u>McKinley v. Abbott</u>, 643 F.3d 403, 405 (5th Cir. 2011); <i>see</i> <u>Ex Parte Young</u>, 28 S. Ct. 441 (1908).  However, "the <u>Young</u> exception does not apply to <i>state</i> law claims brought against the state," and the Eleventh Amendment therefore bars official capacity suits based on alleged state law violations. <u>McKinley</u>, 643 F.3d at 406 (emphasis in original).  Count VII alleges that Defendant's enforcement of Taylor's treatment scheme

---

[12] Document No. 169 at 4 (emphasis in original).

[13] Document No. 163 at 6-7.

5

fails to provide the "appropriate and necessary treatment" prescribed by Section 841.007 of the Texas Health and Safety Code.[14] Because Count VII is alleged against Defendant Edd only in his official capacity and alleges only a state law violation, it is dismissed for lack of subject matter jurisdiction.

C.    *Rooker-Feldman* Doctrine

Defendant asserts that Plaintiff's other claims are barred under the Rooker-Feldman doctrine because they challenge the validity of the state court's commitment order.  The Rooker-Feldman doctrine bars an individual from filing a civil rights suit in federal court to attack a state civil judgment.  *See* Liedtke v. State Bar of Texas, 18 F.3d 315, 317 (5th Cir. 1994) (citing Rooker v. Fidelity Trust Co., 44 S. Ct. 149 (1923) and District of Columbia Court of Appeals v. Feldman, 103 S. Ct. 1303 (1983)).  The Rooker-Feldman doctrine provides that when issues raised in a federal court are "inextricably intertwined" with a state judgment and the court is "in essence being called upon to review the state-court decision," the federal court lacks subject matter jurisdiction to conduct such a review.  Davis v. Bayless, 70 F.3d 367, 375 (5th Cir. 1995).  *See also* In re Reitnauer, 152 F.3d 341,

_____

[14] Document No. 155-1 at 41.  *See* TEX. HEALTH & SAFETY CODE § 841.007 ("The Office of Violent Sex Offender Management is responsible for providing appropriate and necessary treatment and supervision through the case management system.").

343 (5th Cir. 1998) ("In a nutshell, the [Rooker-Feldman] doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments."). The Supreme Court has clarified the narrow scope of the Rooker-Feldman doctrine, stating that its applicability is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 125 S. Ct. 1517, 1521-22 (2005).

Defendant contends that the Rooker-Feldman doctrine deprives the Court of subject matter jurisdiction over Plaintiff's claims because Plaintiff's claims directly challenge the terms of Plaintiff's state court commitment order. Defendant argues that Plaintiff's allegations regarding changes in treatment curriculums and requirements and the location of treatment are "inextricably intertwined" with the requirements of his commitment orders, "which require him to submit to a treatment plan determined by OVSOM and his treatment provider and live in a residential facility under contract with OVSOM."[15]

Defendant has not shown that Plaintiff's claims are inextricably intertwined with the validity of Plaintiff's civil

_____

[15] Document No. 163 at 9.

7

commitment order, such that this Court is in essence being asked to review the state court's judgment of commitment.  Plaintiff states that he is not challenging his civil commitment order or any aspect of the civil commitment proceedings; instead, he is only challenging the overall "implementation and enforcement of the treatment program . . . as punitive, and as constituting preventive detention and inhumane treatment."[16]  Because the Court is not being called upon to review Plaintiff's civil commitment proceedings or the state court's determination that Plaintiff is subject to civil commitment, the <u>Rooker-Feldman</u> doctrine does not bar Plaintiff's present claims.[17]

---

[16] Document No. 169 at 7.

[17] Defendant also asserts that Plaintiff's claims are barred under <u>Heck v. Humphrey</u>, 114 S. Ct. 2364 (1994) because Plaintiff has not shown that he has exhausted available *habeas corpus* remedies.  In <u>Heck</u>, the Supreme Court held that a district court must generally dismiss a prisoner's complaint brought pursuant to 42 U.S.C. § 1983, if success in the civil rights action would necessarily imply the invalidity of the plaintiff's conviction or sentence.  <u>Id.</u> at 2372.  Assuming, *arguendo*, that <u>Heck</u> applies to Plaintiff's civil commitment, the <u>Heck</u> rule does not bar Plaintiff's claim for essentially the same reasons that the <u>Rooker-Feldman</u> doctrine is inapplicable: success on the merits of Plaintiff's claim would not necessarily invalidate his civil commitment.  *See* <u>Heck</u>, 114 S. Ct. at 2372-73 ("But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.") (emphasis in original); *see also* <u>Bush v. Strain</u>, 513 F.3d 492, 498 (5th Cir. 2008) (<u>Heck</u> does not apply where "the factual basis for the conviction is temporally and conceptually distinct" from the asserted civil claims.").

C.   <u>Standing</u>

Defendant asserts that Plaintiff lacks standing as to his due process claims alleged in Counts VIII, IX and X, because he has not alleged that he has been prosecuted for any rule violation, nor has he alleged any other concrete injury due to the threat of prosecution.  This is a challenge to the existence of a cause of action in each of these counts, and is properly considered as an attack on the merits of Plaintiff's claim.  *See* <u>Williamson v. Tucker</u>, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.").

### III. <u>Rule 12(b)(6)--Failure to State a Claim</u>

Defendant moves to dismiss Plaintiff's claims on the ground that Plaintiff has failed to allege sufficient facts to state a plausible claim for relief.

A.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974), abrogated on other grounds by <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727 (1982).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint.  <u>La Porte Construction Co., v. Bayshore Nat'l Bank of La Porte, Tex.</u>, 805 F.2d 1254, 1255 (5th Cir. 1986).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise

10

a right to relief above the speculative level, on the assumption
that all the allegations in the complaint are true (even if
doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations and
internal footnote omitted).  A motion to dismiss under Rule
12(b)(6) "is viewed with disfavor and is rarely granted."
Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th
Cir. 2009).

B.  The Counts Alleging Claims Against Defendant Edd

    1.   Count II: "Overall Implementation" of SVP Act

    Count II of Plaintiff's First Amended Complaint alleges in
conclusory terms that the "overall implementation" of the SVP Act
by Defendant Taylor, and that the "enforcement thereof" by a number
of named Defendants, including Edd, is "inhumane treatment in
violation of the substantive due process requirements of the
Fourteenth Amendment."[18]  However, each of the specific policies
mentioned in support of this claim--confinement of "statutorily
mandated outpatients," overly restrictive and broad "adhesion
contracts," inadequate rehabilitative treatment, and threat of
arrest and prosecution[19]--is challenged separately in Plaintiff's
other claims, not all of which name Edd as a responsible Defendant.

---

[18] Document No. 155 at 38.

[19] Id.

11

Because Plaintiff does not plead facts linking Defendant Edd, a contract mental health professional, to the "overall implementation" of the SVP Act, or facts to state a claim sufficient to draw a reasonable inference that Defendant is liable for "inhumane treatment" of Plaintiff, this claim against Defendant Edd will be dismissed.  Each of Plaintiff's specific claims against Defendant Edd under other Counts, however, will be examined on its merits.

      2.   <u>Counts VIII, IX and X:  Due Process Based on "Adhesion Contracts"</u>

In Counts VIII and IX of his First Amended Complaint, Plaintiff alleges that Defendant Edd violated Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment by "imposition and enforcement" of "adhesion contracts" under "coercion and duress" without "a hearing [or] accompanying safeguards."[20]   Plaintiff further alleges in Count X that these "adhesion contracts" amount to a "de facto 'private Penal Code'" under which he is "subject to arrest and prosecution as a third degree felony for 'technical violations' of the terms, conditions or requirements of the illegal adhesion contracts."[21]   These so-called "adhesion contracts," which Plaintiff attaches as exhibits

---

[20] <u>Id.</u> at 41-42.

[21] <u>Id.</u> at 42-43.

to his First Amended Complaint, consist of Supervision Requirements (Exhibit 15), Council on Sex Offender Treatment ("CSOT") agreement (Exhibit 16),  Agreement Regarding Therapeutic Activities (Exhibit 17), Treatment Behavior Contract Requirements (Exhibit 18), Global Positioning Tracking Service Requirements for the Wearable Miniature-Tracking Device (Exhibit 19), and CSOT Tracking Services Cost Agreement (Exhibit 22).  These documents set forth various rules for participation by Plaintiff in the Outpatient Violent Sex Offender Program, rules for wearing the GPS devices, rules of conduct for civil committees, rules for participation in the therapeutic program, and behavioral rules for pro-social conduct at home, work, treatment, and in the community.  Each set of rules, which bears the heading of either the Office of Violent Sex Offender Management or the Council on Sex Offender Treatment, is called a "contract," and recites that it has been read and explained to Plaintiff, whose signature on the document confirms his agreement "to abide by these requirements."

Plaintiff alleges that these contracts prohibit and effectively criminalize otherwise legal and constitutionally protected conduct.[22]  He conclusorily claims that these contracts "deny Plaintiff almost every constitutional right the United States Constitution bestows upon him," including "fundamental rights

---

[22] Id. at 17–18.

protected by the Fourth, Fifth, and Fourteenth Amendments."[23]  The
rules--or contracts--are detailed and comprehensive, and reflect a
wide range of serious issues that confront sexually violent
predators civilly committed for treatment of what the Legislature
describes as "a behavioral abnormality that is not amenable to
traditional mental illness treatment modalities and that makes the
predators likely to engage in repeated predatory acts of sexual
violence."  TEX. HEALTH & SAFETY CODE § 841.001.

In Counts VIII, IX and X, however, Plaintiff essentially makes
a broadside attack on all the rules of this treatment program, and
charges that Defendant Edd "knew or should have known" that
implementation of the rules was "in violation of the due process
requirements of the Fourteen Amendment."  Plaintiff's resort to
general notions of substantive due process, rather than identifying
any specific unconstitutional prosecution of Plaintiff for a rules
violation or other constitutional injury sustained by Plaintiff
makes this claim conclusory and implausible.  The Supreme Court has
recognized that the substantive due process framework should not be
applied where a claim is covered by a specific constitutional
provision.  _See_ <u>United States v. Lanier</u>, 117 S. Ct. 1219, 1227 n.7
(1997) (clarifying prior holding in <u>Graham v. Connor</u>, 109 S. Ct.
1865 (1989)).  Plaintiff has not identified in Counts VIII, IX and
X any injury he suffered, caused specifically by Defendant Edd's

---

[23] <u>Id.</u> ¶ 78.

enforcement of the "adhesion contracts," that cannot be separately analyzed under a specific constitutional provision, as Plaintiff does elsewhere.  Thus, Plaintiff's general allegations regarding Defendant Edd's knowledge and observance of the "adhesion contracts" are insufficient to state a plausible due process claim. Therefore, Counts VIII, IX and X will be dismissed as to Defendant Edd.

    3.   <u>Counts VI and XIV:  Due Process – Sex Offender Treatment</u>

In Count VI Plaintiff alleges that Defendant Edd violated Plaintiff's substantive due process right to adequate treatment for his behavioral abnormality.  Plaintiff alleges that the treatment scheme "as utilized by the treatment providers, including Defendant Edd, grossly fail[s] to meet the minimum professional standards and best practices generally accepted throughout the profession."[24] Plaintiff further alleges that "the failure to implement an adequate, bona fide treatment scheme leading to a realistic opportunity for release violates the due process requirements of the Fourteenth Amendment."[25]

In Count XIV Plaintiff alleges that Defendant Edd violated his substantive due process rights under the Fourteenth Amendment by requiring Plaintiff to engage in treatment from three different

---

[24] <u>Id.</u> at 41.

[25] <u>Id.</u>

curriculums since April, 2005.[26]   Plaintiff alleges that in June 2008, after Plaintiff for three years worked on the original treatment workbook, a new "CORE" workbook was introduced.[27] "Defendant Edd required Plaintiff to discard the first workbook, and changed Plaintiff's treatment to the 'Core' Workbook (treatment workbook II), essentially forcing him to begin treatment anew."[28] Five years later, in September 2013, Plaintiff alleges Defendant Edd required Plaintiff to begin treatment in a <u>new</u> LEAD treatment workbook III, effectively requiring Plaintiff to begin treatment all over again for a third time.[29]   These two curriculum workbook changes over a period of years allegedly prevented Plaintiff from adequately progressing in treatment and becoming eligible for placement in "aftercare," a level of treatment for which he has been eligible since at least February 2012.[30]   Plaintiff accuses Defendant Edd of "intentional delay in [Plaintiff's] treatment and progression," and alleges that Defendant Edd wrongfully imposed an additional requirement that Plaintiff obtain employment before he would be eligible for placement in aftercare.[31]

---

[26] <u>Id.</u> at 45–46.

[27] <u>Id.</u> ¶ 127.

[28] <u>Id.</u>

[29] <u>Id.</u> ¶ 130.

[30] <u>Id.</u> ¶¶ 134, 137.

[31] <u>Id.</u> ¶ 135.

Plaintiff's treatment claims rely on case law from the Ninth Circuit holding that "the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released." Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000) (citing Ohlinger v. Watson, 652 F.2d 775, 778 (9th Cir. 1980) ("Adequate and effective treatment is constitutionally required because, absent treatment, appellants could be held indefinitely as a result of their mental illness . . . .")). However, at least one other circuit has declined to recognize such a right, noting that "the Supreme Court has recognized a substantive due process right to reasonably safe custodial conditions, but not a broader due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." *See* Elizabeth M. v. Montenez, 458 F.3d 779, 788 (8th Cir. 2006) (citing Youngberg v. Romeo, 102 S. Ct. 2452 (1982)); Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991) (holding that person who was civilly committed for purposes of safe-keeping did not have a constitutional right to psychiatric treatment for pedophilia); *see also* Kansas v. Hendricks, 117 S. Ct. 2072, 2084 (1997) ("[W]e have never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available.").

17

To date, the Fifth Circuit has not published an opinion on whether civil committees are entitled under the Fourteenth Amendment to treatment, and if so, what legal standard applies when evaluating the adequacy of any treatment provided.  In Bohannon v. Doe, 527 F. App'x 283 (5th Cir. 2013), however, a panel of the Fifth Circuit reversed a district court's dismissal of certain due process claims brought by a civilly committed sexually violent predator at a halfway house in Fort Worth, Texas.  In doing so, the Court recognized that the Texas SVP Act "specifically states that sexually violent predators are committed in order for the state to provide them with 'outpatient treatment and supervision.'"  Id. at 289 (quoting Tex. Health & Safety Code § 841.081(a) (West 2006)).  The Court went on to note that "[w]hile courts of appeals have been reluctant to articulate a specific standard applicable to civilly committed individuals, it nevertheless seems that restrictions are permissible so long as they advance the state's interest in security, order, and rehabilitation." Id. at 294 (citing Ahlers v. Rabinowitz, 684 F.3d 53, 64 (2d Cir. 2012)).  The Fifth Circuit's observation in Bohannan that the Texas SVP Act envisions treatment for SVPs, and the apparent split of opinion among other circuits as to the exact parameters of a civil committee's constitutional rights, militate against dismissal of Plaintiff's treatment claims at this pleading stage.  Viewing the pleading in the light most favorable to Plaintiff, he has alleged some facts that arguably

18

support a reasonable inference that Defendant's treatment decisions
may have violated Plaintiff's right to treatment.   Plaintiff's
allegations, construed liberally, essentially assert that Defendant
changed the treatment curriculum a couple of times over several
years, and wrongfully imposed one or more additional requirements
upon Plaintiff, which at least prevented and at worst were intended
to prevent Plaintiff from successfully completing his treatment and
rehabilitation, and thereby unnecessarily prolong his civil
commitment.   At this pleading stage, Defendant has not shown that
these allegations are insufficient to state a plausible substantive
due process claim under the Fourteenth Amendment for which relief
may be granted.   Thus, Defendant Edd's motion to dismiss is denied
as to Plaintiff's substantive due process claims in Counts VI and
XIV based on unconstitutionally inadequate treatment.

    4.   <u>Count XIX: Conspiracy</u>

In Count XIX Plaintiff generally alleges that Defendant Edd
conspired with five other defendants to subject Plaintiff to a
system of punitive and preventive detention in violation of the
Fourteenth Amendment.[32]   Plaintiff's only specific conspiracy
allegation against Defendant Edd is that he and Defendant White

---

[32] Document No. 155 at 49-50.

acted "to delay, suspend, and prevent [Plaintiff's] progression in treatment."[33]

To state a claim for conspiracy under § 1983, a plaintiff must allege facts showing "an agreement to commit an illegal act which resulted in the plaintiff's injury." Hay v. City of Irving, 893 F.2d 796, 799 (5th Cir. 1990). The plaintiff must plead "operative facts" showing an illegal agreement; "bald allegations" of an agreement will not suffice. Lynch v. Cannatella, 810 F.2d 1363, 1369-70 (5th Cir. 1987).

Although Plaintiff conclusorily alleges that there was an agreement between Defendant Edd and Defendant White to delay, suspend and prevent Plaintiff's progression in treatment, Plaintiff does not plead any operative facts showing how or when an illegal agreement was formed. Nor has Plaintiff alleged any particular concerted action that would support an inference that conspiratorial conduct was afoot. Instead, Plaintiff simply "incorporates by reference" paragraphs 24 through 162 of his First Amended Complaint, which encompass nearly the entire fact section of his pleading, most of which makes no reference to Defendant Edd.[34] Plaintiff has failed to state a plausible conspiracy claim under § 1983. Thus, Count XIX against Defendant Edd is dismissed.

---

[33] Id. at 50.

[34] Id.

C.   <u>Qualified Immunity</u>

Defendant asserts that he is entitled to qualified immunity from Plaintiff's claims for damages because his actions were objectively reasonable in light of clearly established law at the time.

Government officials who perform "discretionary functions" are entitled to the defense of qualified immunity from suits in their individual capacity.  <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982).  The doctrine of qualified immunity protects government officials sued pursuant to § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  <u>Id.</u> (internal quotation marks omitted).  The Fifth Circuit has emphasized the broad protections of qualified immunity, stating that it "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  <u>DePree v. Saunders</u>, 588 F.3d 282, 288 (5th Cir. 2009).

Once a defendant invokes the qualified immunity defense, the plaintiff bears the burden of showing its inapplicability.  <u>Club Retro, L.L.C. v. Hilton</u>, 568 F.3d 181, 194 (5th Cir. 2009).  To

21

satisfy that burden, a plaintiff must meet a two-prong test.  Id.
"First,  he  must  claim  that  the  defendants  committed  a
constitutional violation under current law."  Atteberry v. Nocona
Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "Second, he must
claim that the defendants' actions were objectively unreasonable in
light of the law that was clearly established at the time of the
actions  complained  of."   Id.   "To  be  clearly  established  for
purposes  of  qualified  immunity,  the  contours  of  the  [consti-
tutional]  right  must  be  sufficiently  clear  that  a  reasonable
official  would  understand  that  what  he  is  doing  violates  that
right."   Id. at 256 (citations,  internal quotation marks,  and
alterations  omitted).   The  objective  unreasonableness  inquiry
requires  examination  of  the  defendant's  belief  that  his  or  her
actions were lawful under the particular circumstances.  Bush v.
Strain, 513 F.3d 492, 502 (5th Cir. 2008).

As the Fifth Circuit has noted, the qualified immunity defense
"turns on the circumstances and motivations of the defendant, and
it  therefore  ordinarily  requires  some  evidentiary  showing.
[Qualified immunity] would rarely, if ever, justify dismissing a
complaint in response to a bare Rule 12(b)(6) motion."  Sims v.
Adams, 537 F.2d 829, 832 (1976) (citing Stephenson v. Gaskins, 531
F.2d 765 (5th Cir. 1976); Imbler v. Pachtman, 96 S. Ct. 984, 990
n.13 (1976)).  Thus, as to those claims found above to have been
adequately  pled  to  state  a  claim  against  Defendant  Edd,

adjudication of Defendant's defense of qualified immunity should await Defendant Edd's filing of an Answer with his affirmative defense(s) and an evidentiary motion.

D.   <u>State Statutory Immunity</u>

Defendant asserts that he is entitled to immunity pursuant to the SVP Act, which provides that "a person providing, or contracting, appointed or volunteering to perform, a tracking service or another service under this chapter" shall be "immune from liability for good faith conduct under this chapter." TEX. HEALTH & SAFETY CODE § 841.147(4).  The statute further provides that OVSOM "shall approve and contract for the provision of a treatment plan for the committed person to be developed by the treatment provider." <u>Id.</u> § 841.083(a).

As Plaintiff has pointed out, Defendant has not provided legal support for the proposition that a state statute can grant immunity from liability under Section 1983 for violations of federal constitutional rights.  Nor has Defendant shown that the contours of the good-faith immunity provided under the SVP Act are different from the qualified immunity available under federal law.  Thus, Defendant is not entitled to dismissal on the basis of state-law immunity.

IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant Edd's Motion to Dismiss (Document No. 163) is DENIED as to the substantive Due Process claims in Counts VI and XIV of Plaintiff's First Amended Complaint, alleging an inadequacy of treatment for Plaintiff's behavioral abnormalities; Defendant Edd's Motion to Dismiss is GRANTED as to the State law claim in Count VII against Defendant Edd in his official capacity, which claim is DISMISSED without prejudice for lack of jurisdiction; and Defendant Edd's Motion to Dismiss is GRANTED as to all other claims against Defendant and on all other Counts in which Defendant Edd is named, and those claims and Counts against Defendant Edd are all DISMISSED for failure to state a claim upon which relief can be granted.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 31s day of March, 2015.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE