IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES RICHARDS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-1394 |
| | § | |
| ALLISON TAYLOR, *et al.*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendants Taylor's and McLane's Motion to Dismiss Pursuant to Federal Rules 12(b)(1) and 12(b)(6) (Document No. 179). For the reasons that follow, the motion will be granted in part and otherwise denied.

I. Background

*Pro se* Plaintiff James Richards ("Plaintiff") was adjudicated a sexually violent predator ("SVP") under the Texas Civil Commitment of Sexually Violent Predators Act ("SVP Act") and civilly committed to the supervision of the State of Texas, Office of Violent Sexual Offender Management ("OVSOM").[1] Plaintiff pleads that he is confined at a halfway house at the Southeast Texas Transitional Center ("STTC") in Houston, Texas, while receiving

_____

[1] On June 17, 2015, Texas Governor Abbott signed into law Senate Bill No. 746, which, *inter alia*, replaced the OVSOM with the Texas Civil Commitment Office. *See* Act of May 18, 2015, 84th Leg., R.S., ch. 845, § 1, 2015 Tex. Sess. Law Serv. Ch. 845 (West).

treatment for his behavioral abnormality, and that the terms of his supervision and treatment at STTC, as imposed and implemented by Defendant Allison Taylor ("Taylor") and others, violate his civil rights.[2]

Taylor was the Executive Director of the OVSOM when Plaintiff filed this suit, and Plaintiff alleged claims against Taylor in both her individual and official capacities.[3]  In May 2014, Taylor was succeeded by Defendant Marsha McLane ("McLane," and together with Taylor, "Defendants"), and McLane, in her official capacity, was substituted for Taylor in her official capacity, such that Plaintiff's official capacity claims against Taylor are now claims against McLane.[4]

Plaintiff alleges the following claims against both Taylor in her individual capacity and McLane in her official capacity:

> Count I: Denial of substantive due process based on punitive and preventative detention in "overall implementation" of the SVP Act.[5]

---

[2] Document No. 155 (Pl.'s 1st Am. Compl.); Plaintiff initially was granted leave to proceed *in forma pauperis*.  *See* Document Nos. 2, 14.  After Plaintiff obtained full-time employment, he paid the $400 filing fee.  *See* Order dated July 2, 2015 (Document No. 205 at 2).

[3] <u>Id.</u>

[4] *See* Document Nos. 162, 164.

[5] Document No. 155 at 37-38.

2

Count II: Denial of substantive due process based on inhumane treatment in "overall implementation" of the SVP Act.[6]

Count III: Denial of substantive and procedural due process based on failure to provide "genuine 'outpatient' treatment."[7]

Count IV: Violation of TEX. HEALTH & SAFETY CODE §§ 841.081(a) and 841.082(a) requirement of outpatient treatment.[8]

Count VI: Denial of substantive due process based on constitutionally inadequate sex offender treatment.[9]

Count VIII: Denial of substantive due process by implementation and imposition of "adhesion contracts."[10]

Count IX: Denial of procedural due process by imposition and enforcement of standardized "adhesion contracts" without a hearing or other procedural safeguards.[11]

Count XI: Denial of Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments based on imposition of "adhesion contracts."[12]

Plaintiff alleges the following claims against Taylor in her individual capacity:

---

[6] Id. at 38-39.

[7] Id. at 39.

[8] Id. at 39-40.

[9] Id. at 40-41.

[10] Id. at 41-42.

[11] Id. at 42.

[12] Id. at 43-44. Unlike the other counts, Count XI does not specify whether the claim is alleged against Taylor in her individual or official capacity, and the Court assumes without deciding that Plaintiff alleges both.

3

Count XVI: Violation of Plaintiff's due process property interest through fraud and extortion.[13]

Count XIX: Conspiracy to subject Plaintiff to a system of punitive and preventive detention in violation of the Fourteenth Amendment.[14]

Plaintiff alleges the following claims against McLane in her official capacity:

Count V: Violation of court order directing "outpatient" treatment.[15]

Count VII: Violation of Tex. HEALTH & SAFETY CODE § 841.007 requirement for appropriate and necessary treatment.[16]

Count X: Denial of procedural and substantive due process based on the "adhesion contracts" constituting a *de facto* "private penal code."[17]

Count XII: Violation of procedural due process by failing to provide adequate disciplinary process.[18]

Defendants move to dismiss Plaintiff's claims under Rules 12(b)(1) and 12(b)(6).[19]

---

[13] Document No. 155 at 47-48.

[14] Id. at 49-50.

[15] Id. at 40.

[16] Id. at 41.

[17] Id. at 42-43.

[18] Id. at 44.

[19] Document No. 179.

II. <u>Impact of Recent Statutory Amendment</u>

On June 17, 2015, Governor Greg Abbott signed into law an amendment to the SVP Act (the "2015 Amendment") that significantly changed Texas's treatment scheme for SVPs.  *See* Act of May 18, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law Serv. Ch. 845 (West).  Most significantly for purposes of this case, the 2015 Amendment deleted all references to "outpatient treatment" and eliminated the criminal penalties for violations of requirements imposed by Plaintiff's treatment providers.  <u>Id.</u>

This amendment brings Texas's SVP scheme in line with similar programs that the Supreme Court has upheld as constitutional. *See* <u>Kansas v. Hendricks</u>, 117 S. Ct. 2072, 2083 (1997) (finding Kansas Sexually Violent Predator Act to be non-punitive and constitutional; <u>Seling v. Young</u>, 121 S. Ct. 727, 733-34 (2001) (rejecting challenge to Washington's SVP Act and noting that it is "strikingly similar" to the Kansas scheme in <u>Hendricks</u>, such that the court "proceed[s] on the understanding that the Washington Act is civil in nature.").  As the Texas Supreme Court noted in 2005, every other state with an SVP civil commitment program--including the one upheld by the United States Supreme Court in <u>Hendricks</u>-- required inpatient treatment, while "[t]he Texas SVP scheme is unique in that it provides for outpatient commitment and, perhaps consequently, imposes severe criminal penalties for violating a condition of confinement." <u>In re Commitment of Fisher</u>, 164 S.W.3d

5

637, 652 (Tex. 2005) (noting that because of these two elements, "the Texas Act appears at once less restrictive and potentially more restrictive than its out-of-state counterparts"). The 2015 Amendment changed both unique elements of the Texas SVP scheme by eliminating commitments of sexually violent predators to outpatient treatment and supervision and, concomitantly, repealing the felony penal sanctions for violating conditions imposed by outpatient treatment providers. Instead, the 2015 Amendment requires a tiered treatment program that allows SVPs to progress "from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment."[20]

The Court on July 2, 2015, ordered Plaintiff to show cause why his official capacity claims against McLane should not be dismissed as moot in light of the 2015 Amendment, noting that Plaintiff's pleadings and briefing emphasize that his case "has as its foundation the statutory premise that he is an 'outpatient' entitled to non-punitive 'outpatient' treatment and supervision

---

[20] The newly added Section 841.0831 provides that the Texas Civil Commitment Office "shall develop a tiered program for the supervision and treatment of a committed person," which program "must provide for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment." TEX. HEALTH & SAFETY CODE § 841.0831. Thus, the possibility of outpatient treatment is not forbidden by the amended SVP Act, but such treatment, if provided, would be simply one stage in a progressive treatment process.

. . . ."[21]  Because the SVP Act, as amended, no longer provides a "statutory premise that [Plaintiff] is an 'outpatient' entitled to non-punitive 'outpatient' treatment," the Court noted that Plaintiff's official capacity claims against McLane, which seek only injunctive and declaratory relief,[22] appear to be moot.[23] Plaintiff responds that his official capacity claims are not moot because "[t]he legislative amendments to Chapter 841 of the Texas Health and Safety Code does not require, and the Legislature did not intend retrospective application," and therefore "Plaintiff's vested, statutory right to 'outpatient' treatment and supervision and the 'foundation' for his claims remain intact."[24]

---

[21]  Document No. 206; *see also* Document No. 155 ¶ 15; Document No. 190 at 2.

[22]  *See* Document No. 190 at 10 ("Plaintiff makes no claim for monetary damages against either Defendant in their respective official capacities.").

[23]  Document No. 206 at 2-3.

[24]  Document No. 207 at 2, 5.  In support of this argument, Plaintiff relies upon Section 40(a) of the 2015 Amendment:

(a) Except as provided by Subsection (a-1) of this section [relating to jurisdiction and representation in cases pending at the time of enactment], the changes in law made by this Act to Chapter 841, Health and Safety Code, apply to a civil commitment proceeding under that chapter that is initiated on or after the effective date of this Act, regardless of when the applicable petition for civil commitment was filed.

Act of May 18, 2015, 84th Leg., R.S., ch. 845, § 40(a), 2015 Tex. Sess. Law Serv. Ch. 845 (West).  Section 40(a) establishes that the new requirements for civil commitment *proceedings* apply to all such proceedings that take place on or after the effective date of the

Plaintiff is correct insofar as he argues that the 2015 Amendment does not apply retroactively to preclude Plaintiff from seeking relief for whatever causes of action may have accrued to him based on his treatment during the time before the effective date of the 2015 Amendment. *See* State v. Humble Oil & Ref. Co., 169 S.W.2d 707, 707-09 (Tex. 1943) (Under Texas law, "statutes will not be applied retrospectively unless it appears by fair implication from the language used that it was the intention of the Legislature to make it applicable to both past and future transactions."); TEX. GOV'T CODE § 311.031(a)(2) (amendment of a statute does not affect "any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it"). Plaintiff's individual capacity claims for monetary damages based on past violations of his statutory rights are unaffected by the 2015 Amendment.

Plaintiff's official capacity claims for prospective injunctive relief, however, do not implicate retroactivity, because these claims involve only Plaintiff's post-amendment rights. *See* Landgraf v. USI Film Products, 114 S. Ct. 1483, 1501 (1994) ("When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not

---

2015 Amendment, even if the petition for the proceeding had been filed beforehand.  It says nothing about the substantive rights or obligations of previously adjudged sexually violent predators who were civil committees at the time the 2015 Amendment was enacted.

8

retroactive."). Plaintiff argues, however, that he has an ongoing "vested right to outpatient treatment," such that the terms of his Order of Civil Commitment cannot be retroactively amended.[25]

Plaintiff cites no authority for the proposition that his Order of Civil Commitment, by requiring that Plaintiff be committed for outpatient treatment, thereby confers upon him a vested or unalterable right to outpatient treatment. Plaintiff was ordered to submit to outpatient treatment under the former law because he had been judicially found to be a sexually violent predator, which finding he unsuccessfully opposed. The consequent requirement under former law of commitment to outpatient treatment--like the requirements to submit to GPS monitoring and polygraph and plethysmograph testing, and the prohibitions from going near schools, owning a vehicle, and using alcohol which are also found in his Order of Civil Commitment--is a condition of his commitment to achieve the statute's dual objectives of treatment for the sexually violent predator and protection of the public, and is not an entitlement such as those found in the cases cited by Plaintiff regarding tax benefits, immigration rights, and compensatory remedies. Likewise, the 2015 Amendment does not impermissibly "increase [Plaintiff's] liability for past conduct," <u>Landgraf</u>, 114 S. Ct. at 1505, because Plaintiff's commitment to outpatient treatment was not a punishment for past conduct but rather a civil

---

[25] Document No. 207 at 7; *see also* Document No. 213 at 4.

commitment based on a finding that Plaintiff's behavioral abnormality made him "likely to engage in repeated predatory acts of sexual violence."[26]   *See* <u>Hendricks</u>, 117 S. Ct. at 2083 ("The State may take measures to restrict the freedom of the dangerously mentally ill.  This is a legitimate nonpunitive governmental objective and has been historically so regarded.").  Plaintiff has cited no authority and the Court knows of none that precludes the Legislature from changing the modalities for effective treatment of sexually violent predators.

Indeed, the 2015 Amendment did just that.  It entailed a comprehensive change in the treatment scheme for those adjudged to

---

[26]   *See* TEX. HEALTH & SAFETY CODE § 841.001 (Texas Legislature enacted the SVP Act to respond to "a small but extremely dangerous group of sexually violent predators" who "have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence."); <u>id.</u> § 841.002(2) ("'Behavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person.").

Because Plaintiff's civil commitment is based on his behavioral abnormality and not any charge to which Plaintiff could have pled guilty, the conditions of his commitment--designed to treat Plaintiff effectively--differ from collateral consequences of a criminal conviction, which may not be altered retroactively. *See, e.g.*, <u>I.N.S. v. St. Cyr</u>, 121 S. Ct. 2271, 2293 (2001) ("Because respondent, and other aliens like him, almost certainly relied upon [the likelihood of receiving discretionary relief from deportation] in deciding whether to forgo their right to a trial, the elimination of any possibility of [that] relief by IIRIRA has an obvious and severe retroactive effect.").  In contrast, Plaintiff does not argue that he bargained for or relied on a "right" to outpatient treatment in any way.

be sexually violent predators, including those who had been so adjudged before the Amendment.  Thus, the 2015 Amendment requires that

> If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.

Act of May 18, 2015, 84th Leg., R.S., ch. 845, § 40(b), 2015 Tex. Sess. Law Serv. Ch. 845 (West); *see* id. § 13 (removing reference in § 841.082 to "outpatient" treatment and adding requirement that committee "reside where instructed" by the Texas Civil Commitment Office); *see also* id. § 41 ("The change in law made by this Act in amending Section 841.085, Health and Safety Code, [removing criminal penalties for violations of supervisor's written instructions] applies to an offense committed before, on, or after the effective date of this Act, except that a final conviction for an offense under that section that exists on the effective date of this Act remains unaffected by this Act."). Accordingly, the 2015 Amendment requires that commitment orders such as Plaintiff's be reformed to comport with the amended statutory requirements for treatment and supervision of SVPs.

Such modification of the terms of an SVP's commitment order is consistent with the proviso already a part of the statute that

authorized modifications as part of the biennial review process.
*See* TEX. HEALTH & SAFETY CODE § 841.102(c)(1) ("The judge shall set a
hearing if the judge determines at the biennial review that: (1) a
requirement imposed on the person under this chapter should be
modified."). Indeed, the Court takes judicial notice that the
state trial court modified Plaintiff's commitment terms to require
him to live at STTC (then known as the Ben Reid facility) as part
of a biennial review approximately a decade ago. *See* In re
Commitment of Richards, 202 S.W.3d 779 (Tex. App.-Beaumont 2006)
(rejecting Plaintiff's appeal of trial court's modification of
commitment terms). Accordingly, even before the 2015 Amendment,
the terms of Plaintiff's commitment were not unalterable, as he now
contends.

Finally, as discussed above, the Legislature's elimination of
the statutory requirement of outpatient treatment is part of a
comprehensive reform that brings Texas's SVP treatment scheme in
line with those upheld by the Supreme Court as constitutional.[27]
Plaintiff in this case has vigorously challenged the
constitutionality of the prior scheme and its implementation. Now
he claims, however, that he is entitled as a matter of right to

---

[27] Plaintiff argues that "[t]he amendatory Act's requirement
of total confinement would clearly amount to punishment," and civil
committees cannot be subjected to punishment under the Fourteenth
Amendment. Document No. 207 at 8. As discussed above, the 2015
Amendment brings Texas's SVP treatment scheme in line with those
upheld by the Supreme Court as non-punitive and constitutional.

enjoy one aspect of that scheme--outpatient treatment--*after* the Amendment's elimination of the "severe criminal penalties" formerly available to assure the committees' compliance with this outpatient status. *Cf.* Fisher, 164 S.W.3d at 652 ("The Texas SVP scheme is unique in that it provides for outpatient commitment and, perhaps consequently, imposes severe criminal penalties for violating a condition of confinement."). Such a result would be antithetical to the comprehensive reform enacted by the 2015 Amendment.

In sum, Plaintiff has not shown any statutory or constitutional basis for finding that he has an unalterable right for outpatient treatment by reason of the prior legislative treatment scheme such that he has a continuing right to injunctive relief after enactment of the reforms of the 2015 Amendment. Plaintiff's official capacity claims against McClane for prospective relief are therefore dismissed.

### III. Rule 12(b)(1)--Subject Matter Jurisdiction

Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" Halmekangas v. State Farm Fire and Cas. Co., 603 F.3d 290, 292 (5th Cir. 2010) (citations omitted). As such, the existence of subject matter jurisdiction may be challenged at any stage in the litigation and may be raised by the district court on its own motion. *See* Nguyen v. Dist. Director, Bureau of

13

Immigration and Customs Enforcement, 400 F.3d 255, 260 (5th Cir. 2005) (citations omitted).  Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The burden of establishing subject matter jurisdiction is on the party seeking to invoke it.  *See* Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).  When a Rule 12(b)(1) motion is filed along with other Rule 12 motions, the court should first consider the Rule 12(b)(1) motion.  Id.

Defendants argue under Rule 12(b)(1) that (1) Plaintiff's claim in Count IV should be dismissed because Texas law does not recognize an implied cause of action for damages under the SVP Act and Taylor is entitled to statutory immunity, (2) Plaintiff's claims are barred by the Rooker-Feldman doctrine, and (3) Plaintiff lacks standing to pursue his Section 1983 claims.[28]

A.   State Law Damages Action

Plaintiff alleges in Count IV that Taylor's "implementation of a confinement scheme . . . violate[s] state law that promises and guarantees 'outpatient treatment and supervision.'"[29]  Taylor argues that Texas law does not recognize an implied cause of action for

---

[28] Document No. 179 at 5-12.  Defendants' other Rule 12(b)(1) arguments are relevant only to Plaintiff's official capacity claims, which are moot.

[29] Document No. 155 at 39-40.

damages under the SVP Act, and "[e]ven if such a claim were cognizable, the Texas Legislature has explicitly extended immunity to employees of OVSOM, who act in good faith."[30]  *See* TEX. HEALTH & SAFETY CODE § 841.147(1) (employee or officer of OVSOM is "immune from liability for good faith conduct under this chapter"). Plaintiff responds that he does not seek damages for violations of the SVP Act, but rather for "violations of a **'state created liberty interest'** in genuine 'outpatient' conditions and treatment," which liberty interest is created by Sections 841.081(a) and 841.082.[31] Assuming *arguendo* that the SVP Act creates such a liberty interest and that Plaintiff's pleading alleges a violation of that liberty interest rather than of the SVP Act itself, Plaintiff has not pled any specific facts demonstrating that Taylor acted other than in good faith when she "implement[ed] a confinement scheme."  Under Section 841.147(1), therefore, Taylor has immunity from liability for Plaintiff's state law claim, and Count IV is dismissed for lack of subject matter jurisdiction.

---

[30] Document No. 179 at 5.

[31] Document No. 190 at 3 (emphasis in original). *See also* TEX. HEALTH & SAFETY CODE §§ 841.081(a) ("If at a trial conducted under Subchapter D the judge or jury determines that the person is a sexually violent predator, the judge shall commit the person for outpatient treatment and supervision to be coordinated by the case manager."), 841.082(a) ("Before entering an order directing a person's outpatient civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community.").

B.   _Rooker-Feldman_ Doctrine

     Taylor asserts that Plaintiff's other claims are barred under
the Rooker-Feldman doctrine because they challenge the validity of
the state court's commitment order.   The Rooker-Feldman doctrine
bars an individual from filing a civil rights suit in federal court
to attack a state civil judgment.   _See_ Liedtke v. State Bar of
Texas, 18 F.3d 315, 317 (5th Cir. 1994) (citing Rooker v. Fidelity
Trust Co., 44 S. Ct. 149 (1923) and D.C. Court of Appeals v.
Feldman, 103 S. Ct. 1303 (1983)).   The Rooker-Feldman doctrine
provides   that   when   issues   raised   in   a   federal   court   are
"inextricably intertwined" with a state judgment and the court is
"in essence being called upon to review the state-court decision,"
the federal court lacks subject matter jurisdiction to conduct such
a review.   Davis v. Bayless, 70 F.3d 367, 375 (5th Cir. 1995).   _See
also_ In re Reitnauer, 152 F.3d 341, 343 (5th Cir. 1998) ("In a
nutshell, the [Rooker-Feldman] doctrine holds that inferior federal
courts do not have the power to modify or reverse state court
judgments.").   The Supreme Court has clarified the narrow scope of
the Rooker-Feldman doctrine, stating that its applicability is
"confined to cases of the kind from which the doctrine acquired its
name: cases brought by state-court losers complaining of injuries
caused by state-court judgments rendered before the district court
proceedings   commenced   and   inviting   district   court   review   and

16

rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 125 S. Ct. 1517, 1521-22 (2005).

Taylor contends that the <u>Rooker-Feldman</u> doctrine deprives the Court of subject matter jurisdiction over Plaintiff's claims because Plaintiff's claims directly challenge the terms of Plaintiff's state court commitment order and two state court decisions affirming his commitment and its terms.[32]  In <u>In re Commitment of Richards</u>, No. 09-03-168 CV, 2004 WL 256744 (Tex. App.-Beaumont Feb. 12, 2004), the Texas Court of Appeals affirmed Plaintiff's civil commitment and rejected his arguments that Chapter 841 is unconstitutional as punitive and that polygraph testing requirement violates the Fifth Amendment.  Two years later, in <u>In re Commitment of Richards</u>, 202 S.W.3d 779 (Tex. App.-Beaumont 2006), the court rejected Plaintiff's habeas claim based on various restrictions in his treatment plan, none of which are challenged in this case, and dismissed for lack of jurisdiction his appeal of his biennial review.

In the 2006 case, Plaintiff also challenged a new requirement by the trial court that Richards reside in a halfway house after he violated the terms of his treatment plan by engaging in sexual contact.  202 S.W.3d at 792.  The court found that "Richards failed to show that his placement at the Ben Reid facility [now the STTC] was not a required course of treatment by the Council, or that the

---

[32] Document No. 179 at 6-8.

placement was not a reasonable means of achieving the goals of treatment, supervision, or community protection," and therefore upheld the requirement that Plaintiff live there. <u>Id.</u> ("If living at a halfway house such as the Ben Reid facility serves to achieve the statute's goals, it can be included as part of a treatment plan under the Final Judgment and Commitment Order."). In Count III, Plaintiff now challenges Taylor's requirement that he be "confined" at STTC, and Counts I and II challenge Taylor's "overall implementation" of the statute including her "illegal confinement of statutorily mandated outpatients."[33] These claims are inextricably intertwined with the state court order affirming that requirement. Accordingly, the Court lacks jurisdiction to review Count III and--to the extent they challenge Plaintiff's confinement at STTC--Counts I and II, which claims are dismissed for lack of subject matter jurisdiction.

Taylor has not shown that Plaintiff's remaining claims are inextricably intertwined with the validity of Plaintiff's civil commitment order or either of the two subsequent state appellate decisions, such that this Court is in essence being asked to review the state court's judgment. Plaintiff states that he is not challenging his civil commitment order or any aspect of the civil commitment proceedings; instead, he is only challenging the

---

[33] Document No. 155 at 37-39.

18

conditions of his commitment as imposed by Taylor and others.[34] Because Plaintiff's remaining claims do not call upon the Court to review Plaintiff's civil commitment proceedings, the state court's determination that Plaintiff is subject to civil commitment, or the subsequent state court decisions affirming certain conditions of Plaintiff's treatment, the Rooker-Feldman doctrine does not bar Plaintiff's remaining claims against Taylor in Counts I, II, VI, VIII, IX, XI, XVI, and XIX.[35]

C.   Standing

     Taylor argues that Plaintiff lacks standing as to all of his Section 1983 claims, because he has not alleged facts establishing

---

[34] Document No. 190 at 6.

[35] Taylor also asserts that Plaintiff's claims are barred under Heck v. Humphrey, 114 S. Ct. 2364 (1994) because Plaintiff has not shown that he has exhausted available *habeas corpus* remedies.   In Heck, the Supreme Court held that a district court must generally dismiss a prisoner's complaint brought pursuant to 42 U.S.C. § 1983, if success in the civil rights action would necessarily imply the invalidity of the plaintiff's conviction or sentence. Id. at 2372. Assuming, *arguendo*, that Heck applies to Plaintiff's civil commitment, the Heck rule does not bar Plaintiff's remaining claims for essentially the same reasons that the Rooker-Feldman doctrine is inapplicable: success on the merits of Plaintiff's claim would not necessarily invalidate his civil commitment. *See* Heck, 114 S. Ct. at 2372-73 ("But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.") (emphasis in original); *see also* Bush v. Strain, 513 F.3d 492, 498 (5th Cir. 2008) (Heck does not apply where "the factual basis for the conviction is temporally and conceptually distinct" from the asserted civil claims.").

that his commitment conditions are unconstitutional or that he has suffered injury in fact.[36]  This is a challenge to the existence of a cause of action in each of Plaintiff's Section 1983 claims, and is properly considered as an attack on the merits of Plaintiff's claims.  *See* Williamson v. Tucker, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.").

## IV. Rule 12(b)(6)--Failure to State a Claim

Taylor moves to dismiss Plaintiff's claims under Rule 12(b)(6), arguing that (1) Plaintiff's claims are barred by *res judicata* and collateral estoppel, (2) the civil commitment program has been found constitutional, (3) Taylor was not personally involved in Plaintiff's allegedly unconstitutional treatment, (4) Plaintiff fails to state a claim for violation of substantive due process, (5) Plaintiff does not have a protected liberty

---

[36] Document No. 179 at 8-10.

20

interest, (6) Taylor is entitled to qualified immunity, and (7) Taylor is entitled to immunity under the SVP Act.[37]

A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts in the complaint.  La Porte Constr. Co. v. Bayshore Nat'l Bank, 805 F.2d 1254, 1255 (5th Cir. 1986).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[37] Id. at 12-25.

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1965 (citations and internal footnote omitted).  A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009).

B. Analysis

    1. *Res Judicata* and Collateral Estoppel

Taylor argues that "Plaintiff is barred from bringing up the same civil rights claims in this lawsuit that he raised and lost in the district court under the doctrine of *res judicata* and collateral estoppel."[38]  As discussed above, Plaintiff's remaining legal claims are distinct from those he advanced in his earlier actions.  *See* Matter of Swate, 99 F.3d 1282, 1286 (5th Cir. 1996) (*res judicata* requires that "the same claim or cause of action was involved in both suits"); id. at 1289 (collateral estoppel requires that "the issue at stake is identical to the one involved in the

---

[38] Id. at 15.

22

prior action"). Furthermore, Plaintiff's suit for the most part challenges conditions and events that occurred in the years following his 2003 commitment and his 2004 and 2006 appeals. Taylor has not established that Plaintiff's remaining claims are barred by *res judicata* or collateral estoppel.

## 2. Constitutionality of the SVP Act

Taylor next argues that Plaintiff's claims must be dismissed because the SVP Act and others like it have consistently been upheld as constitutional, such that "plaintiff Richards' First Amended Complaint fails to state a claim for violations of his civil rights based upon his civil commitment pursuant to the Act."[39] *See* Fisher, 164 S.W.3d 637 (upholding SVP Act); Hendricks, 117 S. Ct. 2072 (upholding Kansas's SVP act). As Plaintiff explains, he does not challenge his commitment itself or the statutory scheme, but rather "the post enactment policies, implementation and administration of the program by the Defendants."[40] Accordingly, the constitutionality of the SVP Act does not dispose of these claims by Plaintiff.

---

[39] Id. at 16–17.

[40] Document No. 190 at 15.

3.   Personal Involvement

Under § 1983, an individual may sue state actors to enforce federal statutory and constitutional rights.  Anderson v. Jackson, 556 F.3d 351, 356 (5th Cir. 2009).  To succeed on a § 1983 claim, an individual must prove that: (1) the conduct in question was committed by an individual acting under the color of state law; and (2) the conduct deprived the claimant of a constitutional right. Kovacic v. Villarreal, 628 F.3d 209, 213 (5th Cir. 2010).  Section 1983 will not support a claim based on *respondeat superior* or vicarious liability.  Pierce v. Texas Dept. of Criminal Justice-Institutional Div., 37 F.3d 1146, 1150 (5th Cir. 1994).  "Personal involvement is an essential element of a civil rights cause of action."  Thompson v. Steele, 709 F.2d 381 (5th Cir. 1983). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."  Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992) (citing Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); *see also* Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 289 (5th Cir. 2002) (Supervisory liability may apply under Section 1983 "'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the

24

moving force of the constitutional violation.'") (quoting Thompkins, 828 F.2d at 304 (internal quotations and citations omitted)).

Taylor argues that Plaintiff fails to state a claim because he does not allege facts demonstrating Taylor's personal involvement.[41] Plaintiff alleges, among other things, that Taylor (1) "has a practice, policy, or procedure of requiring the confinement of outpatients in punitive conditions in secure correctional and other de facto confinement facilities; (2) subjected Plaintiff to confinement at STTC; (3) prevents Plaintiff from possessing a computer or cell phone; (4) punishes committees for not following STTC's rules; (5) "has created and implemented illegal, coerced 'adhesion contracts' that overreach and are overly broad," which create a "de facto 'private criminal law code'"; (6) "has implemented an inadequate treatment scheme that is not outpatient, provides minimal treatment while Plaintiff is confined in the STTC, and amounts to no treatment at all"; (7) changes the treatment workbooks every few years causing indefinite confinement; and (8) denied Plaintiff's July 22, 2010 grievance.[42] At least some of these allegations, taken as true, suffice to establish Taylor's

---

[41] Document No. 179 at 19-22.

[42] Document No. 155 ¶¶ 36, 37, 58, 70, 75, 82, 96, 104, 150. Plaintiff also attaches as part of his pleading no fewer than six policies related to his treatment which are signed by Taylor, as well as correspondence from Taylor regarding one of Plaintiff's grievances. Id., exs. 13, 23-26, 35, 43.

25

involvement in Plaintiff's alleged injuries through either direct action or the establishment of policies that are the moving force behind Plaintiff's injuries. *See* <u>Mouille</u>, 977 F.2d at 929; <u>Cozzo</u>, 279 F.3d at 289.

Taylor argues that her alleged policies cannot give rise to individual capacity claims because Taylor enacted the policies in her official capacity.[43]   However, both individual and official capacity claims may arise from a defendant's actions in her role as a public official. *See* <u>Turner v. Houma Mun. Fire & Police Civil Serv. Bd.</u>, 229 F.3d 478, 484 (5th Cir. 2000) ("The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."); *see also* <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002) (officials may be liable in their individual capacities for "implementing a policy that is itself a repudiation of constitutional rights and the moving force of the constitutional violation." (internal quotation marks and citation omitted)). Taylor also argues that "because Plaintiff does not allege that defendant Taylor is the party who actually implemented policies administered by STTC, he has failed to allege sufficient personal involvement to impute individual liability upon defendant Taylor."[44] The specific allegations detailed above establish that Plaintiff is

---

[43] Document No. 179 at 20.

[44] <u>Id.</u> at 21.

not merely attempting to hold Taylor liable for STTC's policies, but rather challenges Taylor's conduct in authorizing and issuing OVSOM's policies.

### 4.   Substantive Due Process

Plaintiff alleges in Counts I, II, VI, VIII, and XIX violations of substantive due process based on his illegal confinement,[45] the conditions of confinement, continuous curriculum changes, inadequate mental health treatment that does not give him a realistic opportunity for improvement, and the requirement that Plaintiff sign what he describes as restrictive "adhesion contracts," the violation of which would subject him to arrest and criminal prosecution.   In ruling on Defendant Edd's motion to dismiss, the Court previously held that Plaintiff fails to state a claim for violations of substantive due process in Count VIII, and Count VIII is dismissed against Taylor for the same reasons.[46]

---

[45] As discussed above, the Court lacks jurisdiction under the Rooker-Feldman doctrine to review Plaintiff's challenge to his confinement at STTC.

[46] Order on Partial Dismissal (Document No. 198) at 14-15 ("In Counts VIII, IX and X, however, Plaintiff essentially makes a broadside attack on all the rules of this treatment program, and charges that Defendant Edd 'knew or should have known' that implementation of the rules was 'in violation of the due process requirements of the Fourteen Amendment.'   Plaintiff's resort to general notions of substantive due process, rather than identifying any specific unconstitutional prosecution of Plaintiff for a rules violation or other constitutional injury sustained by Plaintiff makes this claim conclusory and implausible.   The Supreme Court has recognized that the substantive due process framework should not be

As for Counts I, II, VI, and XIX, Taylor argues that Plaintiff's substantive due process claims are subject to dismissal because they are based on elements of his Order of Commitment, and therefore Taylor cannot have implemented the policies with the intent to cause injury to Plaintiff.[47]  Although the Order of Civil Commitment requires Plaintiff to "participate in and comply with a specific course of treatment" and follow written supervision requirements of his case manager, this broad language does not preclude Plaintiff from challenging Taylor's numerous requirements which are not specifically mandated by the commitment order.  Nor is Plaintiff required to establish that Taylor intended to cause him injury in order to state a substantive due process claim under the Fourteenth Amendment.  *See* <u>Youngberg v. Romeo</u>, 102 S. Ct. 2452, 2461 (1982) (involuntary civil committee has substantive due process right to "reasonable conditions of safety and freedom from unreasonable restraints" which entitles him "to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" and is violated

---

applied where a claim is covered by a specific constitutional provision.  *See* <u>United States v. Lanier</u>, 117 S. Ct. 1219, 1227 n.7 (1997) (clarifying prior holding in <u>Graham v. Connor</u>, 109 S. Ct. 1865 (1989)).  Plaintiff has not identified in Counts VIII, IX and X any injury he suffered, caused specifically by Defendant Edd's enforcement of the 'adhesion contracts,' that cannot be separately analyzed under a specific constitutional provision, as Plaintiff does elsewhere.").  This analysis applies equally to Defendant Taylor.

[47] Document No. 179 at 22-23.

when "the decision by the professional [providing treatment] is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.").

5.   Liberty Interest

Taylor argues that Plaintiff's claims in Counts IX, XI, XVI, and XIX fail because Plaintiff lacks a protected liberty interest under the First, Fifth, Eighth and Fourteenth Amendments.[48] Taylor's argument relies on a two-part test developed by the Fifth Circuit to determine when the imposition of additional conditions of parole violates a parolee's procedural due process rights. *See* Coleman v. Dretke, 395 F.3d 216, 221-24 (5th Cir. 2004) (holding that state's imposition of sex-offender classification and treatment on parolee who had not been convicted of sex crime without any process was unconstitutional where classification and treatment were (1) stigmatizing and (2) qualitatively different from other conditions which might attend an inmate's release); Jennings v. Owens, 602 F.3d 652, 659 (5th Cir. 2010) (no violation of procedural due process where sex offender conditions were imposed on parolee who had prior sex offense conviction).

---

[48] Document No. 179 at 23-24.

This test is inapposite to Plaintiff's claims.  Taylor cites no authority to support her conclusory assertion that "sex parole conditions" are analogous to SVP civil commitment conditions.  *See* Youngberg, 102 S. Ct. at 2461 ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."); Coleman, 395 F.3d at 221-22 (liberty interests may be circumscribed when an individual has been convicted of a crime, and parole is "an established variation on imprisonment of convicted criminals.") (quoting Morrissey v. Brewer, 92 S. Ct. 2593, 2598 (1972)).  Furthermore, Counts XI and XIX do not allege procedural due process violations.  Taylor has not established that she is entitled to dismissal of Plaintiff's claims in Counts IX, XI, XVI, and XIX.

6.   Qualified Immunity

Government officials who perform "discretionary functions" are entitled to the defense of qualified immunity from suits in their individual capacity.  Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).  The doctrine of qualified immunity protects government officials sued pursuant to § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 129 S. Ct. 808, 815

30

(2009).  The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (internal quotation marks omitted).  The Fifth Circuit has emphasized the broad protections of qualified immunity, stating that it "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  DePree v. Saunders, 588 F.3d 282, 288 (5th Cir. 2009).

Once a defendant invokes the qualified immunity defense, the plaintiff bears the burden of showing its inapplicability.  Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009).  To satisfy that burden, a plaintiff must meet a two-prong test.  Id. "First, he must claim that the defendants committed a constitutional violation under current law."  Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  Id. "To be clearly established for purposes of qualified immunity, the contours of the [consti-tutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 256 (citations, internal quotation marks, and alterations omitted).  The objective unreasonableness inquiry requires examination of the defendant's belief that his or her

actions were lawful under the particular circumstances.  <u>Bush v. Strain</u>, 513 F.3d 492, 502 (5th Cir. 2008).

Taylor asserts that she is entitled to qualified immunity because Plaintiff has not established that Taylor was personally involved in any violations of Plaintiff's constitutional rights, and that it is unnecessary to reach the "objective legal reasonableness" test.[49]  However, as discussed above, Plaintiff has adequately alleged Taylor's personal involvement as to Counts I, II, VI, IX, XI, XVI, and XIX, and Taylor has not shown that those claims are otherwise subject to dismissal.  As the Fifth Circuit has noted, the qualified immunity defense "turns on the circumstances and motivations of the defendant, and it therefore ordinarily requires some evidentiary showing.  [Qualified immunity] would rarely, if ever, justify dismissing a complaint in response to a bare Rule 12(b)(6) motion."  <u>Sims v. Adams</u>, 537 F.2d 829, 832 (1976) (citing <u>Stephenson v. Gaskins</u>, 531 F.2d 765 (5th Cir. 1976); <u>Imbler v. Pachtman</u>, 96 S. Ct. 984, 990 n.13 (1976)).  Thus, as to those claims found above to have been adequately pled to state a claim against Taylor, adjudication of Taylor's defense of qualified immunity should await Taylor's filing of an Answer with her affirmative defense(s) and an evidentiary motion.

---

[49] Document No. 179 at 24.

7.    State Statutory Immunity

Taylor asserts that she is entitled to immunity pursuant to the SVP Act, which provides that an employee or officer of OVSOM is "immune from liability for good faith conduct under this chapter." TEX. HEALTH & SAFETY CODE § 841.147(1).  As discussed above, this gives Taylor immunity from Plaintiff's state law claim for money damages. However, as Plaintiff has pointed out, Defendant has not provided legal support for the proposition that a state statute can grant immunity from liability under Section 1983 for violations of federal constitutional rights.  Nor has Defendant shown that the contours of the good-faith immunity provided under the SVP Act are different from the qualified immunity available under federal law. Thus, Defendant is not entitled to dismissal on the basis of state-law immunity.

V. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendants Taylor and McLane's Motion to Dismiss Pursuant to Federal Rules 12(b)(1) and 12(b)(6) (Document No. 179) is GRANTED IN PART, as follows:  Plaintiff's official capacity claims against McLane are DISMISSED as moot; Plaintiff's individual capacity claims against Taylor in Counts III and IV, along with the portions of Counts I and II that challenges Plaintiff's commitment at STTC are DISMISSED without prejudice for lack of jurisdiction;

33

and Plaintiff's individual capacity claim against Taylor in Count VIII is DISMISSED with prejudice for failure to state a claim. Defendants' motion is otherwise DENIED, and Plaintiff's individual capacity claims against Taylor in Counts I, II, VI, IX, XI, XVI, and XIX remain for adjudication.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 11th day of September, 2015.


EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

34